No. 120,993

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TYLER WAYNE LYON,
*Appellant*.

SYLLABUS BY THE COURT

1.

When reviewing a due process claim, courts first determine whether a protected liberty or property interest is involved. If a protected interest is implicated, the court must determine the nature and extent of the process that is due. But a due process violation exists only if the complaining party shows that he or she was denied a specific procedural protection to which he or she is entitled.

2.

Although a district court's decision to impose probation is an act of grace subject to judicial discretion, once granted probation, the probationer acquires a conditional liberty interest subject to substantive and procedural due process limits on its revocation. The protections contained in K.S.A. 2018 Supp. 22-3716 satisfy all constitutional due process requirements necessary in probation revocation proceedings.

3.

When calculating a defendant's criminal history, a sentencing court considers the person's prior Kansas and out-of-state convictions and classifies each conviction as a person or nonperson offense.

4.

For an out-of-state offense or Kansas crime committed before implementation of the Kansas Sentencing Guidelines Act (KSGA), K.S.A. 2019 Supp. 21-6801 et seq., to be comparable to a current offense under the Kansas criminal code, within the meaning of K.S.A. 2017 Supp. 21-6811(e)(3) and K.S.A. 2017 Supp. 21-6810(d), the earlier crime's elements cannot be broader than the elements of the current Kansas crime that is being considered. As a result, a prior out-of-state offense or pre-KSGA crime must have elements identical to or narrower than a current Kansas person crime to be scored as a person offense for criminal history purposes.

5.

A defendant's prior Kansas crime committed post-implementation of the Kansas Sentencing Guidelines Act (KSGA), K.S.A. 2019 Supp. 21-6801 et seq., may be scored as a person offense for criminal history purposes even if the elements of the prior version of the offense are broader than the elements of the current version of the crime. When the statute under which the prior post-KSGA conviction was committed is still in effect, the KSGA simply points the sentencing court to that statute to determine how to designate the prior conviction.

6.

K.S.A. 2017 Supp. 21-6810(d)(8), which provides that "[p]rior convictions of a crime defined by a statute that has since been repealed shall be scored using the classification assigned at the time of such conviction," may apply only when classifying prior Kansas crimes committed post-implementation of the Kansas Sentencing Guidelines Act, K.S.A. 2019 Supp. 21-6801 et seq.

7.

A Kansas crime committed post-implementation of the Kansas Sentencing Guidelines Act, K.S.A. 2019 Supp. 21-6801 et seq., is properly scored as a person

offense if the crime was classified as a person offense when it was committed and when the current crime of conviction was committed even if the prior version of the earlier crime's elements are broader than the elements of the current version.

Appeal from Sedgwick District Court; KEVIN J. O'CONNOR, judge. Opinion filed July 24, 2020. Affirmed.

*James M. Latta*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., GREEN, J., and TIMOTHY J. CHAMBERS, District Judge, assigned.

CHAMBERS, J.:  Tyler Wayne Lyon appeals the revocation of his probation and his sentence. The first issue is straightforward. Were Lyon's due process rights violated when the district court found he violated the terms of his probation by committing the crime of domestic battery when the State alleged he committed the crime of aggravated battery? The second issue enters us into the labyrinth of classification of prior crimes under the Kansas Sentencing Guidelines Act. Did the district court err by classifying his 2010 Kansas aggravated burglary conviction as a person felony when calculating his criminal history score? For the reasons set out below, we affirm the district court on both issues.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 9, 2017, Lyon got into an argument with his brother in the presence of Lyon's girlfriend, their two-year-old son, and a friend. The argument escalated when Lyon went into his bedroom and retrieved a handgun. Lyon pointed the gun at his brother who pushed the gun away. Lyon then began striking his brother with the gun. The gun

3

discharged with the bullet passing through the brother's shoulder and striking the friend in the leg. Lyon was arrested and charged with multiple crimes as a result of the incident.

Pursuant to a plea agreement entered with the prosecution, Lyon pled guilty to two counts of aggravated battery and one count of criminal possession of a firearm. Lyon pled no contest to an additional charge of endangerment of a person. The district court accepted the pleas, and Lyon was found guilty of the four crimes.

A presentence investigation (PSI) report calculated Lyon's criminal history score as C, determined in part on a 2010 Kansas aggravated burglary conviction being classified as a person felony. Based upon his criminal history and crimes of conviction, Lyon's sentence was presumptive prison under the Kansas Sentencing Guidelines Act (KSGA).

At sentencing, the parties agreed that Lyon's criminal history score was C in accordance with the PSI report. Following the terms of the plea agreement of the parties, the district court granted Lyon a dispositional departure placing him on probation for a period of 36 months from an underlying prison sentence of 94 months. The district court noted that Lyon received "one heck of a plea agreement . . . usually people who commit these kinds of acts . . . end up in prison." Conditions of Lyon's probation included prohibitions against breaking any laws and from consuming alcohol.

Approximately four months following sentencing, a warrant was issued alleging Lyon violated the conditions of his probation by disobeying a law and consuming alcohol. Specifically, the warrant alleged Lyon "committed the offense of Aggravated Battery/Domestic Violence" and "consumed alcohol" as alleged in a police report. Lyon contested the allegations.

4

The district court held an evidentiary hearing on the alleged probation violations. Lyon's now ex-girlfriend, C.D., testified she and Lyon got into an argument because she suspected he was talking to another woman. C.D. testified she threatened Lyon with a belt and tried pushing him so she could leave the room. C.D. indicated some difficulty in remembering the events that took place, but she believed Lyon either grabbed or pushed her around the neck and chest area causing her to fall. C.D. lost consciousness and sustained a laceration to the back of her head. While C.D. did not see Lyon drink alcohol that day, she saw a beer can lying on the counter or table next to the couch and presumed it belonged to Lyon.

Lyon testified in his defense admitting he pushed C.D. Lyon testified in the course of the argument C.D. was following him around the house and shoving him. While in the kitchen, Lyon claimed he pushed C.D. because he thought she was going to hit him or grab a knife. According to Lyon, C.D. tripped and fell over a rug when he pushed her. Lyon also admitted drinking a beer that day. In closing argument, Lyon admitted to the consumption of alcohol but argued his actions against C.D. were justified as self-defense and the evidence failed to establish aggravated battery as alleged in the probation violation warrant.

The district court found Lyon had pushed C.D. to the ground and, as a result of the push, C.D. suffered head injuries. The judge noted the size discrepancies of the parties. C.D. is 5 feet, 2 inches tall and weighed about 135 pounds. Lyon is 6 feet 2 inches tall and weighed about 305 pounds. Utilizing his ability to judge the credibility of the witnesses, the judge determined Lyon's use of force was not justified as self-defense.

After reading the definition of domestic battery as set out in K.S.A. 2018 Supp. 21-5414(a), the trial judge found that Lyon had committed the offense of domestic battery under both subsection (a)(1) and subsection (a)(2) of the statute. As a result, the district court ruled Lyon had violated the terms of his probation by violating a law and

consuming alcohol. The trial judge specifically found an aggravated battery had not been committed, but rather the misdemeanor offense of domestic battery had been committed.

The district court considered intermediate sanctions but determined they would be inappropriate considering the previously granted departure sentence and the commission of a new crime involving violence. Lyon's probation was revoked, and the underlying sentence ordered executed.

Lyon appeals.

REVOCATION OF PROBATION

Lyon first contends the district court erred in revoking his probation when it found that he violated the terms of his probation by committing the new crime of domestic battery. Lyon claims this finding violated his due process rights because the State failed to allege that he committed a domestic battery in the probation violation warrant.

A district court's decision to revoke probation involves two steps:  (1) a factual determination that the probationer has violated a condition of probation; and (2) a discretionary determination as to whether the proved violation warrants revocation of probation. *State v. Skolaut*, 286 Kan. 219, 227-29, 182 P.3d 1231 (2008). The State must establish a probation violation by a preponderance of the evidence. *State v. Inkelaar*, 38 Kan. App. 2d 312, 315, 164 P.3d 844 (2007). We review the district court's factual finding that a violation occurred for substantial competent evidence. *Inkelaar*, Kan. App. 2d at 315-16. Once a probation violation has been established, the decision to revoke probation rests within the district court's discretion. *State v. Hurley*, 303 Kan. 575, 580, 363 P.3d 1095 (2016). When determining whether a district court complied with due process requirements in revoking a defendant's probation, we apply an unlimited standard of review. 303 Kan. at 580.

When reviewing a due process claim, we first determine whether a protected liberty or property interest is involved. *Village Villa v. Kansas Health Policy Authority*, 296 Kan. 315, 331, 291 P.3d 1056 (2013). While the decision to impose probation is an act of grace, once a defendant is granted probation, "he or she acquires a conditional liberty interest which is subject to substantive and procedural due process limits on its revocation." *Hurley*, 303 Kan. at 581. Since a protected interest is implicated, we must determine the nature and extent of the process that is due. *Village Villa*, 296 Kan. at 331.

Due process is flexible in that not all situations calling for procedural safeguards call for the same kind of procedure. See *In re Care & Treatment of Ellison*, 305 Kan. 519, 526, 385 P.3d 15 (2016). A due process violation exists only if the complaining party shows that he or she was denied a specific procedural protection to which he or she is entitled. See *In re K.E.*, 294 Kan. 17, 22, 272 P.3d 28 (2012). The basic elements of procedural due process are notice and "the opportunity to be heard at a meaningful time and in a meaningful manner." *Ellison*, 305 Kan. at 526. "To satisfy due process, notice must be reasonably calculated, under all of the circumstances, to apprise the interested parties of the pendency of an action and to afford the parties an opportunity to present any objections." *Johnson v. Brooks Plumbing, LLC*, 281 Kan. 1212, 1215, 135 P.3d 1203 (2006).

The revocation of a defendant's probation is not part of a criminal prosecution and, therefore, the full panoply of rights in a criminal case is not applicable to a probation revocation proceeding. *State v. Galaviz*, 296 Kan. 168, 174, 291 P.3d 62 (2012). The United States Supreme Court in *Morrissey v. Brewer*, 408 U.S. 471, 488-89, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972), established minimum due process rights for parolees and later extended those rights to probationers in *Gagnon v. Scarpelli*, 411 U.S. 778, 782, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973). These due process rights include written notice of the claimed probation violations and disclosure of the evidence against the probationer. *Hurley*, 303 Kan. at 582. Our Supreme Court has held that the statute governing

7

probation revocations—K.S.A. 22-3716—satisfies all constitutional requirements necessary in probation revocation proceedings. *State v. Rasler*, 216 Kan. 292, 296, 532 P.2d 1077 (1975).

Under K.S.A. 2018 Supp. 22-3716(b)(1), Lyon's intensive supervision officer (ISO) was required to "submit in writing a report showing in what manner the defendant has violated the conditions" of his probation. In this case, Lyon's ISO submitted a warrant specifying that Lyon violated the condition of his probation requiring that he "obey the laws of the United States, the State of Kansas and any other jurisdiction to whose laws he may be subject." The warrant continued that this condition was violated when "[o]n or about October 18, 2018, the defendant committed the offense of aggravated battery/domestic violence as alleged in Wichita Police Department Incident Report 18C068588."

Lyon argues the district court violated his right to due process by finding he committed domestic battery because the warrant alleged that he committed a different crime of aggravated battery. Lyon asserts that under the rule of lenity, the warrant's assertion that he committed "Aggravated Battery/Domestic Violence" provided notice that the State was alleging he committed only aggravated battery with a domestic violence designation, as opposed to aggravated battery or any crime of domestic violence. Lyon then claims that because the warrant put him on notice of only aggravated battery, the district court violated his due process rights when it found he committed a domestic battery.

Lyon's argument heavily relies on *State v. Scott*, No. 115,432, 2017 WL 2210442 (Kan. App. 2017) (unpublished opinion). An unpublished opinion is not binding precedent but may be cited as persuasive value with respect to a material issue not addressed in a published opinion of a Kansas appellate court. Supreme Court Rule 7.04(g)(2)(i) (2020 Kan. S. Ct. R. 4). In *Scott*, a warrant alleged that Scott appeared to be

under the influence of an unknown substance on a specific date. The State claimed this violated the condition of Scott's probation that he "shall not possess or consume any type of alcohol or drugs unless they are prescribed for him by a licensed physician." 2017 WL 2210442, at *4. Importantly, this condition allowed Scott to take prescription medications and did not address misusing such medications. After an evidentiary hearing showed that he misused prescribed medications, the district judge determined that Scott violated his probation by either using "an unknown substance or as I have determined . . . knowingly misusing his prescribed medications." 2017 WL 2210442, at *2.

On appeal, our court reversed the order finding Scott in violation of his probation. 2017 WL 2210442, at *5. The *Scott* court first concluded that the record did not support the finding that Scott was under the influence of any substance other than his prescription medication. 2017 WL 2210442, at *4. The court then held that Scott's due process rights were violated because the district court relied on a different probation violation than what the State alleged in the warrant, concluding:

"[I]f the State wanted to revoke Scott's probation for misusing his prescription medication, due process required that Scott be put on notice of this. Because the State failed to plead this misuse in the probation violation warrant, the district court could not use Scott's misuse of his prescription medications as a basis to find him in violation of his probation." 2017 WL 2210442, at *5.

The circumstances in *Scott* are materially different from those in this case. Therefore, *Scott* has little persuasive value. Unlike in *Scott*, the district court's finding that Lyon committed a domestic battery means the State proved that he violated a specific condition of probation that was alleged in the warrant. Notably, our court has found that due process does not require the State to assert that a probationer committed a new crime when giving notice of alleged probation violations. *State v. McGill*, 51 Kan. App. 2d 92, 97, 340 P.3d 515 (2015). But in this case, the warrant alleged Lyon committed a new

9

crime, specified the type of crime committed, and noted the relevant facts were contained in a specific police report.

Even accepting Lyon's interpretation that "Aggravated Battery/Domestic Violence" means only aggravated battery with a domestic violence designation, Lyon was given sufficient notice of the violation that the State intended to prove. The warrant's language was reasonably calculated to apprise Lyon that the State intended to establish he violated his probation by committing a criminal offense when he used violence against C.D. on October 18, 2018.

Moreover, even in prosecutions for charged crimes, the accused may be convicted of an offense not included in a complaint if the offense is a lesser included offense of the crime charged. *State v. Daniels*, 223 Kan. 266, Syl. ¶ 5, 573 P.2d 607 (1977); K.S.A. 2019 Supp. 21-5109(b). This is because "the charging of the greater offense satisfies the notice requirements for the lesser offense and the defendant is therefore afforded due process." *State v. Ramirez*, 299 Kan. 224, 228, 328 P.3d 1075 (2014).

Battery is a lesser included offense of various forms of aggravated battery. *State v. Williams*, 308 Kan. 1439, 1457, 430 P.3d 448 (2018). Because the district court determined that Lyon committed domestic battery under either subsections (a)(1) or (a)(2) of K.S.A. 2018 Supp. 21-5414, it necessarily found that Lyon committed the crime of battery against a person with whom he was involved in a dating relationship or a family or household member. See *State v. Harris*, 46 Kan. App. 2d 848, 851-52, 264 P.3d 1055 (2011). And since the warrant alleged Lyon's crime was an act of domestic violence, he was informed that the State was alleging his victim was a person with whom he was involved in a dating relationship or a family or household member. K.S.A. 2019 Supp. 21-5111(i). As a result, the warrant's allegation that Lyon committed "Aggravated Battery/Domestic Violence" satisfied the notice required to find that he committed a domestic battery and afforded him the requisite due process.

10

Lyon does not contest the fact substantial competent evidence exists in the record to support the trial court's finding that he committed the offense of domestic battery. The district court did not violate Lyon's due process rights by finding that he violated his probation by committing a domestic battery. As a result, the district court had the discretion to bypass intermediate sanctions and revoke Lyon's probation under either K.S.A. 2018 Supp. 22-3716(c)(8)(A) or K.S.A. 2018 Supp. 22-3716(c)(9)(B). A reasonable person could agree with the district court, and we find no abuse of discretion in its decision to revoke Lyon's probation and impose his underlying sentence.

The district court did not err in revoking Lyon's probation.

## CRIMINAL HISTORY CLASSIFICATION

Lyon next contends the district court erred by classifying his 2010 Kansas aggravated burglary conviction as a person felony when calculating his criminal history score. Lyon argues this conviction should have been classified as a nonperson felony because the elements of the 2010 version of a Kansas aggravated burglary are broader than of the elements of the 2017 version of the crime.

Classification of prior offenses for criminal history purposes involves statutory interpretation. Statutory interpretation is a question of law subject to unlimited review. *State v. Wetrich*, 307 Kan. 552, 555, 412 P.3d 984 (2018).

The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. *State v. LaPointe*, 309 Kan. 299, 314, 434 P.3d 850 (2019). An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain

from reading something into the statute that is not readily found in its words. *State v. Ayers*, 309 Kan. 162, 163-64, 432 P.3d 663 (2019).

Although criminal statutes are generally strictly construed against the State, this principle is subordinate to the rule that judicial interpretation must be reasonable and sensible to effectuate the legislative design and the true intent of the law. *State v. Gensler*, 308 Kan. 674, 680, 423 P.3d 488 (2018). When construing statutes to determine legislative intent, appellate courts must consider various provisions of an act *in pari materia* with a view of reconciling and bringing the provisions into workable harmony if possible. The courts must construe statutes to avoid unreasonable or absurd results and presume the Legislature does not intend to enact meaningless legislation. *State v. Keel*, 302 Kan. 560, 573-74, 357 P.3d 251 (2015).

Under the KSGA, criminal sentences are based on two controlling factors: the defendant's criminal history and the severity level of the crime committed. K.S.A. 2019 Supp. 21-6804(c). A defendant's criminal history includes an offender's criminal record of adult felony convictions, juvenile adjudications, and misdemeanors as provided in K.S.A. 2019 Supp. 21-6810. When calculating a defendant's criminal history score, a district court lists the defendant's prior convictions and classifies each conviction as a person or nonperson offense. K.S.A. 2019 Supp. 21-6810. The KSGA uses prior Kansas convictions and prior out-of-state convictions to calculate a defendant's criminal history. K.S.A. 2019 Supp. 21-6810; K.S.A. 2019 Supp. 21-6811(e)(1). Prior convictions can further be broken down into out-of-state convictions; pre-guideline Kansas convictions; and post-guideline Kansas convictions with July 1, 1993 being the date the KSGA went into effect.

Once the court has determined the appropriate criminal history score, that history score and crime severity level are placed into the appropriate sentencing grid and that sentence within the designated box will determine the presumptive sentence for the new

12

crime of conviction. Prior convictions for person crimes will, as a general rule, result in a harsher sentence. See K.S.A. 2019 Supp. 21-6809.

No one can dispute the determination of classification of both out-of-state and pre-KSGA Kansas convictions, has been a long and at times confusing endeavor. Due to a lack of guidance by the Legislature the Kansas courts have had to over a period of many years determine what constitutes a comparable offense and the date of determination of that comparable offense as set out in the KSGA in relation to out-of- state convictions and pre-guideline Kansas convictions. See *State v. Vandervort*, 276 Kan. 164, 72 P.3d 925 (2003); *State v. Williams*, 291 Kan. 554, 244 P.3d 667 (2010); *State v. Murdock*, 299 Kan. 312, 323 P.3d 846 (2014); *State v. Keel*, 302 Kan. 560, 357 P.3d 251 (2015); *State v. Wetrich*, 307 Kan. 552, 412 P.3d 984 (2018); *State v. Murdock*, 309 Kan. 585, 439 P.3d 307 (2019); and *State v. Coleman*, 311 Kan. __, 460 P.3d 368 (2020).

The present state of Kansas law requires an out-of-state offense to be comparable to a current offense under the Kansas criminal code within the meaning of K.S.A. 2017 Supp. 21-6811(e)(3) and K.S.A. 2017 Supp. 21-6810(d). The earlier crime's elements cannot be broader than the elements of the current Kansas crime being considered. *Wetrich*, 307 Kan. at 562. Similarly, the identical requirement applies to Kansas crimes committed before implementation of the Kansas Sentencing Guidelines Act (KSGA). *Coleman*, 460 P.3d at 371. As a result, a prior out-of-state offense or pre-KSGA crime must have identical or narrower elements than a current Kansas person crime to be scored as a person offense for criminal history purposes.

When we consider classification of post-guideline Kansas convictions do we continue on the same path, or do we take a simpler more direct route? "[P]erceived simplicity can often conflict with actual simplicity of usage." Wroblewski, *The Complexity of Simplicity*, UX Matters.com (December 4, 2006). Can the conflict be reconciled?

We now turn to Lyon's arguments.

Lyon contends that the *Wetrich* identical-or-narrower test applies to his post-KSGA Kansas offenses. Lyon reasons that under *Keel*, classification of his prior 2010 Kansas aggravated burglary conviction is determined from the classification of the "*comparable* Kansas offense" in effect when he committed his 2017 crime. And relying on *Wetrich*, Lyon claims that a 2017 Kansas offense is comparable to his 2010 Kansas crime only if the earlier crime's elements are identical to, or narrower than, the 2017 version of the crime to which it is being compared. Because a 2010 Kansas aggravated burglary is broader than the 2017 version, Lyon suggests there is no comparable person offense and his 2010 conviction must be scored as a nonperson offense.

Since 2010, the Kansas Legislature has recodified the crime, changed the structure of the statute, and amended the definition of aggravated burglary. K.S.A. 2017 Supp. 21-5807(b). The statutory changes added the crime of aggravated burglary of a dwelling, K.S.A. 2017 Supp. 21-5807(b)(1). Most important to Lyon's argument, the statutory changes removed certain conduct from the scope of aggravated burglary. Under the 2010 version of aggravated burglary, a person barred from entering a retail establishment who later returned during operating hours when others were present with the intent to shoplift could have been convicted of aggravated burglary. See *State v. Haynes*, No. 96,244, 2007 WL 2239259, at *1 (Kan. App. 2007) (unpublished opinion). But under K.S.A. 2017 Supp. 21-5807(e), an aggravated burglary no longer included

> "any person entering into or remaining in a retail or commercial premises at any time that
> it is open to the public after having received a personal communication from the owner or
> manager of such premises not to enter such premises pursuant to K.S.A. 21-5808, and
> amendments thereto, except when such person is entering into or remaining in such
> premises with the intent to commit a person felony or sexually motivated crime therein."

14

Since Lyon's 2010 Kansas aggravated burglary is broader than the 2017 version of the offense, we must determine whether the *Wetrich* identical-or-narrower test applies to his prior post-KSGA conviction.

We begin by acknowledging that the KSGA contains no explicit language explaining how to classify post-KSGA Kansas convictions as person or nonperson offenses for criminal history purposes. But unlike the legislative silence addressed in *Keel*, the lack of a specific provision describing how to score prior post-KSGA convictions is inconsequential under the circumstances presented in this case. 302 Kan. at 573. As explained below, the overall design and structure of the KSGA instructs that applying the *Wetrich* identical-or-narrower test is inappropriate when classifying post-KSGA convictions as person or nonperson offenses.

It is an "established sentencing rule that the penalty parameters for an offense are fixed on the date the offense was committed." *Keel*, 302 Kan. at 582. As a result, Kansas courts classify a defendant's prior convictions based on the Kansas classification in effect when the current crime was committed. 302 Kan. at 588. Acknowledging this precedent, Lyon's prior convictions must be scored as of the date of his current conviction on September 9, 2017.

In his argument, Lyon sinks his teeth into *Keel*'s language that a prior offense must be classified based on the classification of the current "comparable Kansas offense" and argues this quoted language requires application of the *Wetrich* identical-or-narrower test to determine comparability. However, Lyon's reliance on *Keel* for his position is not convincing. The issue in *Keel* involved classification of a pre-KSGA offense and not post-KSGA offense.

The provisions of the KSGA show that *Wetrich*'s identical-or-narrower test does not apply to post-KSGA convictions. K.S.A. 2017 Supp. 21-6810(d) provides that prior

15

convictions and adjudications for pre-KSGA offenses "shall be scored as a person or nonperson crime using a comparable offense under the Kansas criminal code in effect on the date the current crime of conviction was committed." Similarly, when Lyon was sentenced, K.S.A. 2017 Supp. 21-6811(e)(3) required courts to classify out-of-state convictions by referring to "comparable offenses under the Kansas criminal code in effect on the date the current crime of conviction was committed." Under *Wetrich* and *Coleman*, the use of comparable offenses under these subsections requires the prior offense to have elements identical to, or narrower than, the Kansas crime to which it is being compared.

A rule of statutory construction provides that courts may presume that "the expression of one thing in a statute implies the exclusion of all others." *State v. Sims*, 40 Kan. App. 2d 119, 120, 190 P.3d 271 (2008). Because the Legislature made the decision to limit the comparability approach found in K.S.A. 2017 Supp. 21-6810(d) and K.S.A. 2017 Supp. 21-6811(e)(3) to pre-KSGA offenses and out-of-state offenses, we find the Legislature did not intend this identical-or-narrower comparison approach to apply to post-KSGA offenses.

This interpretation is reasonable given differences between classifying a post-KSGA Kansas conviction and a pre-KSGA Kansas conviction or out-of-state conviction. A pre-KSGA or out-of-state conviction has no person or nonperson designation and courts must use a comparable post-KSGA offense to determine how the prior conviction should be classified. But for post-KSGA convictions, person and nonperson classifications were already set out in the applicable Kansas criminal statute. See *Keel*, 302 Kan. at 574. As a result, when the statute under which the prior post-KSGA conviction is still in effect, the KSGA simply points the court to that statute to determine how to designate the prior conviction. 302 Kan. at 580. So unlike prior out-of-state or pre-KSGA convictions, there is no comparability requirement for scoring post-KSGA convictions.

This interpretation is further strengthened by a review of K.S.A. 2017 Supp. 21-6810(d)(8). Subsection (d)(8) indicates: "Prior convictions of a crime defined by a statute that has since been repealed shall be scored using the classification assigned at the time of such conviction." When construing statutes to determine legislative intent, appellate courts must consider various provisions of an act *in pari materia* with a view of reconciling and bringing the provisions into workable harmony if possible. The courts must construe statutes to avoid unreasonable or absurd results and presume the Legislature does not intend to enact meaningless legislation. *State v. Keel*, 302 Kan. 560, 573-74, 357 P.3d 251 (2015). It would be unreasonable to find a person felony classification is retained when a statute is repealed, but when the statute is merely amended a determination must be made to determine if the two statutes are comparable and based upon that comparison to determine whether the prior crime is classified as a person or nonperson offense.

Accordingly, we find that the *Wetrich* identical-or-narrower test does not apply to scoring Lyon's post-KSGA Kansas conviction of aggravated burglary.

Lyon presents an alternative argument that the identical-or-narrower test is constitutionally mandated by the Sixth Amendment and by failing to use the test the district court engaged in constitutionally improper judicial fact-finding in violation of *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). But Lyon's appeal is timely only to the revocation of his probation, and not to a direct appeal of his sentence for the 2017 crimes. As a result, we treat Lyon's argument as a motion to correct an illegal sentence. See *Coleman*, 460 P.3d at 475. Because the definition of an illegal sentence does not include a claim that the sentence violates a constitutional provision, Lyon may not use a motion to correct an illegal sentence to argue that his sentence is unconstitutional. *State v. Bryant*, 310 Kan. 920, 922, 453 P.3d 279 (2019). Accordingly, we decline to reach the merits of Lyon's constitutional claim.

Having determined that the identical-or-narrower comparability test does not apply to Lyon's post-KSGA offense and his constitutional argument is not properly before the court, we now consider whether a repeal of K.S.A. 21-3716 and or K.S.A. 2017 Supp. 21-5807(b) occurred and then if so whether the provisions of K.S.A. 2017 Supp. 21-6810(d)(8) apply.

Under K.S.A. 2017 Supp. 21-6810(d)(8), "[p]rior convictions of a crime defined by a statute that has since been repealed shall be scored using the classification assigned at the time of such conviction." This subsection implies that "if the statute has not been repealed, then the crime is scored using the classification in the statute at the time of the current crime of conviction." *Keel*, 302 Kan. at 580. So when the statute under which the prior conviction was obtained is still in effect, courts simply look to that statute to determine how to designate the prior conviction. But in the less common circumstance when the Legislature has repealed the post-KSGA criminal statute, courts use the classification assigned when the defendant committed the prior offense. 302 Kan. at 580.

The KSGA does not define what the term "repealed" means in the context of K.S.A. 2017 Supp. 21-6810(d)(8). Black's Law Dictionary defines repeal as an "[a]brogation of an existing law by express legislative act." Black's Law Dictionary 1553 (11th ed. 2019). Our court has previously found that recodification of a criminal statute without a substantive change to the definition of the crime does not amount to a repeal. *State v. Murray*, No. 113,622, 2017 WL 544641, at *9 (Kan. App. 2017) (unpublished opinion). The court in *Murray* further opined that "the legislature presumably wanted to provide direction for classifying crimes as person or nonperson offenses in situations where a statute defining a crime no longer existed." 2017 WL 544641, at *9.

In *Murray* our court held the 2010 recodification of the criminal code was a repeal but classified the repeal as a "technical" repeal. *Murray*, 2017 WL 544641, at *9. In *Murray,* our court considered whether a 1977 robbery conviction should be classified as a

18

nonperson felony based upon K.S.A. 2017 Supp. 21-6810(d)(8). It was argued the robbery statute was repealed in the 2010 recodification and therefore the classification existing in 1977 for robbery should then be utilized. Since person/nonperson classifications did not exist prior to the 1993 adoption of the KSGA, the robbery conviction must be classified as a nonperson felony. In the *Murray* opinion, the court found such a result to be unreasonable or absurd and as a result found the recodification of the criminal code did not constitute a repeal of previous criminal statutes. 2017 WL 544641, at *9. *Murray* as an unpublished opinion has persuasive authority but is not binding precedent. Supreme Court Rule 7.04(g)(2)(i).

An equally strong argument can be made that the 2010 recodification of K.S.A. 21-3716 was a repeal of a criminal statute under K.S.A. 2017 Supp. 21-6810(d)(8).

Our court has additionally considered the issue of the 2011 recodification of the Kansas criminal code in another previous unpublished opinion. *In re C.T.*, No. 107,841, 2012 WL 5205752 (Kan. App. 2012). The case dealt with the application of K.S.A. 21-3412 to an incident occurring prior to the recodification of the criminal code. Our court indicated therein, "Here, K.S.A. 21-3412 was repealed and K.S.A. 2011 Supp. 21-5413 was enacted by the same legislative action, which was a comprehensive recodification of the Kansas Criminal Code." 2012 WL 5205752, at *3. The court then refers to K.S.A. 2011 Supp. 21-5103(d), the savings clause of the new criminal code which states, "This code has no application to crimes committed prior to July 1, 2011. . . . Prosecutions for prior crimes shall be governed, prosecuted and punished under the laws existing at the time such crimes were committed." *In re C.T.*, 2012 WL 5205752, at *3.

Kansas Statutes Annotated are replete with criminal statutes including the KSGA indicating recodification of the code in 2010 resulted in the repeal of the criminal code then existing. Just a few examples include:  Kansas Statutes Annotated, Volume 2A (2019 Supp.) clearly indicates 21-3716, aggravated burglary, was repealed, indicating:

19

"Repealed, L. 2010, ch. 136, section 307; July 1, 2011." K.S.A. 2011 Supp. 21-5427(3) indicates ". . . any protective order included in K.S.A. 21-4843, prior to its repeal . . . ." Within the KSGA itself, it is indicated the criminal code was repealed in the 2010 recodification. K.S.A. 2019 Supp. 21-6811(d)(1) indicates "if the prior conviction or adjudication was classified as a burglary as defined in K.S.A. 21-3715(a), prior to its repeal . . . ." K.S.A. 2019 Supp. 21-6804(p) is related to enhancement of severity levels. The statute specifically cites aggravated burglary, K.S.A. 21-3716:  "for violations of K.S.A. 21-3701, 21-3715 or 21-3716, prior to their repeal . . . ."

When construing statutes to determine legislative intent, appellate courts must consider various provisions of an act *in pari materia* with a view of reconciling and bringing the provisions into workable harmony if possible. The courts must construe statutes to avoid unreasonable or absurd results and presume the Legislature does not intend to enact meaningless legislation. *Keel*, 302 Kan. 573-74.

K.S.A. 2017 Supp. 21-6810(d)(8) can be readily be interpreted *in pari materia* with all provisions of the KSGA in a manner that reconciles and brings the provisions into workable harmony. K.S.A. 2017 Supp. 21-6810(d)(8) indicates, "Prior convictions of a crime defined by a statute that has since been repealed shall be scored using the classification assigned at the time of such conviction." The only instance that a classification will be "assigned at the time of such conviction" will be when determining a classification of a post-KSGA conviction. K.S.A. 2017 Supp. 21-6810(d)(8) provides guidance to the courts of the State of Kansas on how to classify post-KSGA prior convictions. K.S.A. 2017 Supp. 21-6810(d)(8) does not apply to prior out of state convictions or pre-KSGA Kansas convictions. Such an interpretation is the only way the statute can be reconciled with the other provisions of the KSGA and be reasonable in its application. It is unreasonable to believe the Legislature intended that with an out of state prior conviction a legislative history search is required in the foreign jurisdiction to determine if the criminal statute involved has ever been repealed and or amended. The

20

"unreasonable or absurd result" found in the *Murray* decision would not exist as that case dealt with a pre-KSGA conviction.

Our court has considered whether a change in a crime's classification amounts to a repeal under K.S.A. 2017 Supp. 21-6810(d)(8). Before the *Keel* decision, our court held that a repeal occurs when a crime is changed from a person offense to a nonperson offense. *State v. Peoples*, No. 102,550, 2010 WL 3984794, at *1 (Kan. App. 2010) (unpublished opinion) (holding that prior post-KSGA Kansas identity theft convictions must be scored as person felonies because the criminal statute was repealed when identity theft was changed from a person felony to a nonperson felony). But in *Keel*, our Supreme Court emphasized that sentences should "reflect ever-evolving sentencing philosophies and correction goals," which would include classifying prior identity theft convictions to reflect "the current viewpoint on the severity of identity theft." 302 Kan. at 588. Our court has since determined that *Keel* requires prior post-KSGA offenses to be scored using the current classification in effect even though the classification had been amended. *State v. Patrick*, No. 116,660, 2018 WL 4373053, at *11 (Kan. App. 2018) (unpublished opinion), *rev. denied* 309 Kan. 1352 (2019). In the present case, we are dealing with recodification rather than reclassification.

If the 2010 recodification of the criminal code did not repeal the code then in existence, then what is the effect of the 2016 amendment to the crime of aggravated burglary?

A similar argument can be made that the 2016 amendment to the crime of aggravated burglary constituted a repeal of the then existing crime of aggravated burglary. The 2016 Kansas Laws, Chapter 90 (H.B. 2462) includes in section 5:  "K.S.A. 2015 Supp. 21-5706, 21-5801, 21-5807, and 21-6804 are hereby repealed." Further, the 2016 amendment went far beyond reclassification, substantially altering the definition of aggravated burglary as previously set out in this opinion.

In any event, we need not determine whether the recodification and/or statutory amendments to aggravated burglary amounted to a repeal because the result would be the same. Assuming the recodification and/or amendments were not a repeal, the district court properly scored his prior conviction as a person felony because all forms of aggravated burglary were a person felony when Lyon committed his current crimes. If the recodification and/or amendments amounted to a repeal, the district court properly scored his prior conviction as a person felony because aggravated burglary was a person felony when Lyon committed that crime. As a result, regardless of the statutory amendments to aggravated burglary, the district court properly scored Lyon's prior conviction for aggravated burglary as a person offense.

In simplest terms, we find when a conviction of a prior crime occurs post-implementation of the KSGA, as a matter of practical application, the classification of person or nonperson felony determined at the time of the new conviction will be the same as the classification of the prior crime on the date of its commission unless the Legislature has changed the classification of the crime, *Keel*, 302 Kan. at 573, or the statute has been ruled unconstitutional. K.S.A. 2017 Supp. 21-6810(d)(9). The aggravated burglary was a person felony when committed by Lyon in 2010. Aggravated burglary as amended remained a person felony when Lyon committed the present crimes in 2017. "Simplicity is the ultimate sophistication." (Often attributed to Leonardo de Vinci.). Lyon's 2010 aggravated burglary conviction was properly classified as a person felony.

Affirmed.