NOT DESIGNATED FOR PUBLICATION

No. 123,412

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CHAD DUANE AMACK,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; JASON GEIER, judge. Opinion filed February 4, 2022. Affirmed.

*Korey A. Kaul*, of Kansas Appellate Defender Office, for appellant.

*Jodi Litfin*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., BRUNS and WARNER, JJ.

PER CURIAM: Chad Amack pleaded guilty to possessing drugs. After entering his plea but before sentencing, Amack moved to dismiss his attorney based on discontent with that attorney's actions in a separate matter in which the attorney also represented Amack. The district court briefly questioned Amack and the attorney before determining that any dissatisfaction in the other case did not relate to this one. Amack now appeals that decision, along with the district court's classification of an earlier aggravated-burglary conviction as a person crime for sentencing purposes. For the reasons we explain in this opinion, we find no error in either ruling and affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

In February 2020, Amack pleaded guilty to possessing opiates, a severity level 5 drug felony, after law enforcement found a hydrocodone pill in his pocket. Amack's presentence investigation report calculated his criminal-history score as B, based in part on a 2011 conviction for aggravated burglary. With a B criminal-history score, Amack's new conviction carried a 34-month presumptive prison sentence.

Amack was represented by counsel. But before sentencing, Amack filed a pro se motion to dismiss his attorney, Jason Belveal; at Amack's request, Belveal also moved to withdraw. In support of his motion, Amack indicated that two issues had arisen in a separate case in which Belveal represented him. Amack stated that Belveal advised him in the other case to waive preliminary hearing and not go to trial (which Amack did not like), and Belveal also recommended conducting a hearing via video (which made Amack uncomfortable). In light of these disagreements in the separate case, Amack wanted to remove Belveal in this matter.

At the beginning of the sentencing hearing, Amack reiterated these two grounds for dismissing Belveal, and the district court questioned both Amack and Belveal about the request. The court ultimately denied the motion, reasoning that Amack's grievances related to a different case and the issues in that case were not present here. In other words, the court found that Amack did not show that his dissatisfaction in the other case translated to dissatisfaction in *this* case.

Amack also objected to his criminal-history score, arguing that the presentence investigation report improperly classified his previous aggravated-burglary conviction as a person felony. He acknowledged that the statute defining aggravated burglary at the time of his conviction classified that offense as a person felony. But he argued that the statute has since been amended, and the conduct giving rise to aggravated burglary today

2

is narrower than the previous definition. He argued that the conduct underlying his previous conviction—what he characterized as shoplifting from a Walmart—was not aggravated burglary under current law and should not be scored as such for sentencing purposes.

The district court denied Amack's criminal-history objection, citing recent authority from this court that decided the issue against Amack's position. It then sentenced Amack to a 34-month prison term, the presumptive sentence under the Kansas Sentencing Guidelines.

DISCUSSION

On appeal, Amack renews his challenges to both rulings. He argues that the district court failed to adequately inquire into a potential attorney-client conflict when he sought to dismiss Belveal before sentencing. And he asserts that because the elements of aggravated burglary are now narrower than when he was convicted of that offense, the older version is not "comparable" under the sentencing guidelines to the version in effect during this case. We find neither argument persuasive and affirm the district court.

1. *The district court did not abuse its discretion when it denied Amack's motion to dismiss Belveal.*

The Sixth Amendment to the United States Constitution guarantees an attorney for criminal defendants, but not necessarily the attorney of the defendant's choosing. *State v. Pfannenstiel*, 302 Kan. 747, Syl. ¶ 3, 357 P.3d 877 (2015). When a defendant seeks to dismiss his or her court-appointed attorney, a court need only remove the attorney when the defendant has "[j]ustifiable dissatisfaction" with the lawyer. 302 Kan. 747, Syl. ¶ 3. Justifiable dissatisfaction exists when there is a conflict of interest, an irreconcilable disagreement, or a complete breakdown in communication between attorney and client. 302 Kan. 747, Syl. ¶ 3.

If a defendant expresses dissatisfaction with his or her attorney, the district court must inquire to determine whether that dissatisfaction requires appointment of different counsel—that is, whether it is justifiable. *State v. McDaniel*, 306 Kan. 595, Syl. ¶ 3, 395 P.3d 429 (2017). Appellate courts review the manner of this inquiry and the district court's ultimate decision regarding the appointment of counsel for an abuse of discretion. 306 Kan. at 606. A district court generally abuses its discretion if no reasonable person would agree with its decision, or if the decision is based on a legal or factual error. 306 Kan. at 606.

In the context of a defendant who seeks to dismiss his or her attorney, the Kansas Supreme Court has recognized three ways a district court may abuse its discretion during this process. See 306 Kan. at 606-07. Namely, a court commits reversible error when

- it is aware of a person's potential dissatisfaction with his or her appointed counsel and fails to inquire at all;

- it is aware of potential dissatisfaction and conducts some investigation as to the discord, but its inquiry is inadequate;

- it conducts an appropriate inquiry but abuses its discretion in deciding to dismiss or maintain the current attorney.

An appropriate inquiry involves "fully investigating both the basis for the defendant's dissatisfaction with counsel and the facts necessary for determining whether the dissatisfaction justifies appointing new counsel." *State v. Staten*, 304 Kan. 957, Syl. ¶ 8, 377 P.3d 427 (2016). At the same time, the district court need not undergo a "detailed examination of every nuance of a defendant's claim . . . . A single, open-ended question by the trial court may suffice if it provides the defendant with the opportunity to explain."

4

304 Kan. at 972-73. The focus is not on the defendant's relationship with the attorney, but on whether the attorney can adequately represent the defendant's interests. *Pfannenstiel*, 302 Kan. at 761-62.

When Amack moved to dismiss Belveal, this action triggered the district court's duty to inquire into possible justifiable dissatisfaction. Upon receiving Amack's motion—which asserted dissatisfaction with Belveal in a separate case based on advice to waive preliminary hearing and trial and to conduct a video hearing—the district court conducted the following inquiry:

> "THE COURT: . . . I've read your motion. Is there anything that is not contained in your motion that you would want the Court to know?
> "MR. AMACK: No. That's it.
> "THE COURT: So just so we're clear what is contained in your motion is the basis for asking this Court to remove Mr. Belveal; correct?
> "MR. AMACK: Yes, Your Honor."

The district court then questioned Belveal, who confirmed that there was no video hearing in this case and that he only sought to withdraw because Amack told him to. Because both of Amack's claims involved a separate case, the district court denied his motion, citing *State v. Crawford*, No. 108,038, 2013 WL 5422320 (Kan. App. 2013) (unpublished opinion), *rev. denied* 299 Kan. 1271 (2014).

In *Crawford*, the defendant had the same attorney in three separate cases. At trial in one of them, the defendant sought to remove his attorney from the other two, and his attorney in turn sought to withdraw from the current trial. And in response, the defendant then stated that he wanted to remove the attorney from all three cases, which the district court refused to do. On appeal, the panel noted that despite "some mutual dissatisfaction" and "tension" between the defendant and his attorney, the district court did not err

5

because there was no suggestion the attorney failed to represent his client's interests or could not aid in his client's defense. 2013 WL 5422320, at *8.

In an analogous situation that went the other way, one panel found an inadequate inquiry when a defendant expressed dissatisfaction with an attorney who had represented him in multiple cases. *State v. Bailes*, No. 102,515, 2010 WL 5185773, at *3-5 (Kan. App. 2010) (unpublished opinion). There, the defendant expressed dissatisfaction with his attorney, and his attorney noted that their "'long history'" in other cases caused him to doubt his ability to be an effective advocate. 2010 WL 5185773, at *4-5. Given this exchange, it was an abuse of discretion not to inquire more. Importantly, the basis of the defendant's motion was still the attorney's actions in *that* case—not his *other* cases with the attorney.

Though neither *Crawford* nor *Bailes* is exactly on point, these opinions do suggest that dissatisfaction in one case is not necessarily sufficient to demonstrate justifiable dissatisfaction in another. And neither suggests that the district court's inquiry was inadequate here. The district court received Amack's motion and inquired by asking an open-ended question—essentially giving Amack the floor to elaborate on how Belveal's actions in the other case affected his representation in this one. Amack confirmed that his motion contained everything the court needed to know.

This exchange certainly does not amount to a failure to inquire into the conflict, as Amack suggests. See, e.g., *McDaniel*, 306 Kan. at 607 (failure to inquire when the defendant raised possible conflict and district court cut him off and refused to consider the issue). Rather, the district court read Amack's motion, asked if any other grounds were related to this case, then asked Belveal similar questions.

We also conclude that the district court's inquiry was appropriate. Because Amack's motion raised issues that did not relate to this case, the district court explored

whether Amack's issues in the other case applied to this one. Belveal confirmed that there was no video hearing in this case. Amack also did not waive preliminary hearing in this case because the State proceeded on a grand jury indictment. Nor did Belveal advise Amack not to go to trial; Amack had a different attorney during his plea, who withdrew after Amack filed a disciplinary action against her. Further inquiry into Amack's issues would have required the district court to inquire into a different case before a different judge. Amack simply did not allege any dissatisfaction—let alone justifiable dissatisfaction—with Belveal in this case.

Amack's concerns with Belveal in the other case may have caused tension in this one. But as in *Crawford*, tension is not enough to remove an attorney. Amack did not suggest that Belveal failed to represent his interests or aid in his defense in this case. In fact, at the same hearing where Amack sought to dismiss Belveal, Belveal argued his comprehensive motion objecting to the criminal history in Amack's presentence investigation report—an argument Amack reiterates on appeal. The district court did not abuse its discretion when it denied Amack's request to dismiss his attorney at sentencing.

2. *The district court did not err when it classified Amack's previous conviction for aggravated burglary as a person felony at sentencing.*

Amack next argues that the district court erred when it classified his previous conviction for aggravated burglary as a person felony at sentencing. As we have indicated, the result of this classification—combined with Amack's other previous convictions—was a criminal-history score of B. Amack argues that this offense should have been classified as a nonperson felony, which would have resulted in a criminal-history score of C. More specifically, he asserts that because the previous definition of aggravated burglary was broader than the current definition of that offense, his conviction is no longer "comparable" to the present law. Cf. *State v. Wetrich*, 307 Kan. 552, Syl. ¶ 2, 412 P.3d 984 (2018) (adopting a comparability test for classifying previous out-of-state

convictions at sentencing). He also argues—for the first time on appeal—that the United States Constitution requires the same result.

The Kansas Sentencing Guidelines use a combination of a defendant's criminal history and the severity level of the crime of conviction to determine the presumptive sentencing range for those crimes. See K.S.A. 2020 Supp. 21-6804 (providing the presumptive sentences for nondrug crimes). A person's criminal history for sentencing purposes generally includes any previous felony and misdemeanor convictions. See K.S.A. 2020 Supp. 21-6810(c), (d)(2), (d)(6). The legislature has further classified felonies and misdemeanors as person or nonperson offenses, depending on the nature of the underlying criminal conduct. See K.S.A. 2020 Supp. 21-6810(a). This classification affects a person's overall criminal-history score at sentencing.

Amack's sentencing challenge—whether his earlier aggravated-burglary conviction was properly classified as a person felony—requires us to interpret the Kansas Sentencing Guidelines. See *State v. Keel*, 302 Kan. 560, 571, 357 P.3d 251 (2015). Appellate courts interpret statutes de novo. *Wetrich*, 307 Kan. at 555. "The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained." *Keel*, 302 Kan. at 572. If statutory language is plain and unambiguous, using the words' ordinary meanings, then the plain text controls. 302 Kan. at 572. If a statute is ambiguous, courts may resort to other considerations such as canons of construction or legislative history to determine legislative intent. 302 Kan. at 572. Courts construe statutes to avoid unreasonable results and should assume the legislature enacted statutory provisions for a reason. 302 Kan. 560, Syl. ¶ 7.

When Amack committed the offense leading to his 2011 aggravated-burglary conviction—the offense we are focused on in his sentencing challenge—Kansas law included in the definition of the offense

8

"knowingly and without authority entering into or remaining within any building, manufactured home, mobile home, tent or other structure, or any motor vehicle, aircraft, watercraft, railroad car or other means of conveyance of persons or property in which there is a human being, with intent to commit a felony, theft or sexual battery therein." K.S.A. 2010 Supp. 21-3716.

The legislature overhauled the aggravated-burglary statute in 2016. The new statute exempts "any person entering into or remaining in a retail or commercial premises at any time that it is open to the public after having received a personal communication from the owner or manager of such premises not to enter" unless the person is there to commit a person felony or sexually motivated crime. K.S.A. 2019 Supp. 21-5807(e). In other words, the legislature narrowed the elements of aggravated burglary by exempting conduct that would have qualified under the previous version of the statute. But it is a person felony under both versions of the law. K.S.A. 2010 Supp. 21-3716; K.S.A. 2019 Supp. 21-5807(c)(2).

The Kansas Supreme Court has grappled on numerous occasions with issues that arise when a person's previous conviction does not have a clear person or nonperson designation under Kansas law. See *Wetrich*, 307 Kan. at 555-64; *Keel*, 302 Kan. at 571-91. In *Keel*, the defendant had Kansas convictions that *predated the adoption of the Kansas Sentencing Guidelines*, under statutes that did not carry person-nonperson classifications. 302 Kan. at 571. The court thus turned to the "comparable" Kansas statutes in place when the defendant committed the current crime of conviction. 302 Kan. at 590. After *Keel*, the legislature codified this approach in what is now K.S.A. 2020 Supp. 21-6810(d)(2): "Prior adult felony convictions for offenses that were committed before July 1, 1993, shall be scored as a person or nonperson crime using a comparable offense under the Kansas criminal code in effect on the date the current crime of conviction was committed."

9

*Wetrich* extended this comparability analysis to *out-of-state convictions*—that is, other convictions that may not have a person or nonperson designation. The defendant in *Wetrich* had a previous out-of-state conviction that had different elements than its Kansas counterpart, so he argued it was not comparable to the Kansas offense. 307 Kan. at 557. The court ultimately adopted the "identical-or-narrower rule" for these convictions—in other words, "the elements of the out-of-state crime must be identical to, or narrower than, the elements of the Kansas crime to which it is being referenced." 307 Kan. at 561-62; 307 Kan. 552, Syl. ¶ 3. After *Wetrich*, the legislature adopted a different test for determining whether out-of-state convictions are comparable to person or nonperson offenses in Kansas. See K.S.A. 2019 Supp. 21-6811(e)(3)(B), codifying L. 2019, ch. 59, § 13. But see *State v. Coleman*, 311 Kan. 305, Syl. ¶ 2, 460 P.3d 368 (2020) (continuing to apply the identical-or-narrower analysis to pre-Guidelines convictions).

Amack's previous aggravated-burglary conviction was neither a pre-Guidelines conviction nor an out-of-state offense. Rather, it arose while the Guidelines were in effect. And while the conduct that constitutes aggravated burglary has changed under Kansas law during that time, the legislature classified the offense as a person felony in 2010 (when he committed that offense) and in 2019 (when he committed his current crime of conviction). See K.S.A. 2010 Supp. 21-3716; K.S.A. 2019 Supp. 21-5807(c)(2).

Amack nevertheless argues that the *Keel* and *Wetrich* framework should also apply to post-Guidelines Kansas convictions. In other words, he asserts that the statute supporting his previous aggravated-burglary conviction is not "comparable" to the aggravated-burglary statute at the time of his current crime of conviction because the earlier statute's elements are broader. Under the identical-or-narrower comparability test, this means that his previous aggravated burglary conviction should be considered a nonperson crime.

Several panels of this court have rejected this argument. See *State v. Lyon*, 58 Kan. App. 2d 474, Syl. ¶ 7, 471 P.3d 716, *rev. denied* 312 Kan. 898 (2020); *State v. Morgan*, No. 121,704, 2020 WL 6372282, at *1-2 (Kan. App. 2020) (unpublished opinion) (aggravated burglary), *petition for rev. filed* November 30, 2020; *State v. Rumold*, No. 121,038, 2020 WL 4722328, at *6-7 (Kan. App. 2020) (unpublished opinion), *rev. denied* 313 Kan. 1045 (2021); see also *State v. Terrell*, 60 Kan. App. 2d 39, 42-47, 488 P.3d 520 (finding post-Guidelines convictions under reclassified statutes should be scored according to the classification at the time of the previous convictions when the person-nonperson designation has changed), *rev. granted* 313 Kan. 1046 (2021); *State v. Jackson*, No. 121,827, 2021 WL 4693244, at *12-13 (Kan. App. 2021) (unpublished opinion) (following *Terrell*), *petition for rev. filed* November 8, 2021. These panels have held that a Kansas offense committed while the Guidelines were in effect—that is, on or after July 1, 1993—is "properly scored as a person offense if the crime was classified as a person offense when it was committed and when the current crime of conviction was committed." *Lyon*, 58 Kan. App. 2d 474, Syl. ¶ 7. This is true "even if the prior version of the earlier crime's elements are broader than the elements of the current crime." 58 Kan. App. 2d 474, Syl. ¶ 7.

We find the reasoning of these panels compelling. In particular, *Lyon* examined a virtually identical question—whether a 2010 aggravated burglary conviction should be scored as person or nonperson at sentencing for a 2017 conviction. 58 Kan. App. 2d at 482. In that opinion, we noted that the Guidelines contains no explicit provision for classifying post-Guidelines convictions, unlike convictions that predate the Guidelines' adoption or arise in other states. 58 Kan. App. 2d at 486.

The *Lyon* court noted that comparisons to current Kansas statutes were necessary for pre-Guidelines and out-of-state convictions because these offenses lack a person-nonperson designation. 58 Kan. App. 2d at 487. Courts must compare those convictions with current Kansas offenses to determine whether the older or out-of-state crimes fall

11

under the person or nonperson designation. 58 Kan. App. 2d at 486-87. The same is not true of post-Guidelines convictions, as the legislature has already designated those offenses as person or nonperson crimes. 58 Kan. App. 2d at 487.

For these reasons, it would not make sense to conduct a comparability analysis for post-Guidelines crimes. Indeed, as this case illustrates, to do so would be to place courts in the strange situation of being asked to designate an offense in a manner directly contrary to the legislature's stated wishes. Thus, we agree that when a defendant has a post-Guidelines conviction—even if the legislature has since narrowed or redefined that crime—the Guidelines "simply point[] the court to that statute to determine how to designate the prior conviction." 58 Kan. App. 2d at 487.

The *Lyon* court also determined that even if the legislature had repealed the previous aggravated-burglary statute during the recodification of our Kansas Criminal Code, the result remains the same. 58 Kan. App. 2d at 488-92. K.S.A. 21-6810(d)(8) states that when a previous conviction came under a since-repealed statute, the district court should use the person-nonperson classification from the previous conviction. 58 Kan. App. 2d at 491. In the end, both versions of aggravated burglary are person felonies, and the result is the same regardless of which one applies. 58 Kan. App. 2d at 492. It follows that Amack's previous aggravated-burglary conviction was also a person felony.

We acknowledge that this result may seem harsh in Amack's case. Although the record contains little information about his previous aggravated-burglary conviction, Amack suggests that it was for shoplifting from a Walmart. Depending on the facts of that crime, it could fall under K.S.A. 21-5807(e)—the exemption that the legislature added in 2016. So it is possible that what he did in 2010 would not be aggravated burglary under the law in effect when he committed the current crime of conviction. But that does not change our conclusion that applying the identical-or-narrower approach to

his post-Guidelines conviction would require this court to read restrictions into Kansas law that are not there.

Indeed, the legislature has specifically considered the changes in Kansas law relating to burglary—under the exact statute at issue here, K.S.A. 2019 Supp. 21-5807—when considering whether crimes should be designated as person or nonperson offenses. K.S.A. 2019 Supp. 21-6811(d) explicitly designates certain burglaries as person crimes, and others as nonperson crimes, depending on the applicable provision of the former burglary statute, K.S.A. 21-3715. It does the same for burglaries under the current statute governing burglary and aggravated burglary. See K.S.A. 2019 Supp. 21-6811(d)(1)-(2). But at all relevant times, including after the 2016 amendments, aggravated burglary has remained a person felony.

In an alternative argument, Amack argues that this court is constitutionally prohibited from scoring his prior conviction as a person felony under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and *Descamps v. United States*, 570 U.S. 254, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (2013). The State correctly points out that Amack did not raise this issue before the district court and urges us not to consider the claim for the first time on appeal.

We acknowledge that this question was not raised at sentencing, and as courts of review, we are loath to take up issues—including constitutional issues—that a party has not presented to the district court. *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015). We also note that Amack has not indicated in his brief whether any exceptions to our preservation rules warrant our consideration of this issue. See *Godfrey*, 301 Kan. at 1043-44; Supreme Court Rule 6.02(a)(5) (2021 Kan. S. Ct. R. at 35).

But even if we were inclined to consider Amack's constitutional claim, it would not prevail. A sentencing court is constitutionally prohibited under *Apprendi* and

13

*Descamps* from making factual findings beyond the statutory elements of a previous offense to enhance a person's sentence. See *State v. Dickey*, 301 Kan. 1018, 1039, 350 P.3d 1054 (2015). But the crux of our conclusion here is that a court needs to look only at the classification of the crime stated in the statute, not the facts of the previous offense. Thus, the sentencing court is not making any prohibited factual findings; it is simply applying the classification of the crime set by the legislature.

The district court did not err when it followed the legislature's directive and classified Amack's previous aggravated-burglary conviction as a person felony.

Affirmed.