IN THE SUPREME COURT OF THE STATE OF KANSAS

Nos. 115,293
115,294
115,295
115,305

STATE OF KANSAS,
*Appellee*,

v.

JACQUELINE L. COLEMAN,
*Appellant.*

SYLLABUS BY THE COURT

1.

When calculating a person's criminal history, the revised Kansas Sentencing Guidelines Act, K.S.A. 2018 Supp. 21-6801 et seq., provides that convictions for crimes committed before Kansas designated crimes as person or nonperson offenses are to be classified as a person or nonperson offense by referring to comparable offenses in effect on the date the defendant committed the current crime of conviction.

2.

For a Kansas crime committed before Kansas designated crimes as person or nonperson offenses to be deemed comparable to a current offense under the Kansas criminal code, within the meaning of K.S.A. 2018 Supp. 21-6810, the earlier crime's elements cannot be broader than the current crime's elements. In other words, the earlier crime's elements must be identical to, or narrower than, the elements of the crime to which it is being referenced.

1

Review of the judgment of the Court of Appeals in an unpublished opinion filed March 24, 2017. Appeal from Sedgwick District Court; JOHN J. KISNER, JR., judge. Opinion filed April 3, 2020. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Caroline M. Zuschek*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Matt J. Maloney*, assistant district attorney, argued the cause, and *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

BILES, J.: This is a consolidated appeal challenging sentences imposed for crimes occurring both before and after statutory amendments in 2015 to the revised Kansas Sentencing Guidelines Act, K.S.A. 2018 Supp. 21-6801 et seq. The common issue is whether the district court properly scored a prior 1992 Kansas involuntary manslaughter conviction as a person felony for criminal history purposes. The arguments and rationale differ depending on the timing of the crime, but the outcome is the same. We affirm.

In the direct appeal, which concerns two 2015 thefts committed after changes were made to the revised KSGA, we adopt the identical-or-narrower test from *State v. Wetrich*, 307 Kan. 552, Syl. ¶ 3, 412 P.3d 984 (2018) (statute under which a prior out-of-state conviction was obtained must be identical to or narrower than the crime to which it is compared for the two to be comparable). We hold the *Wetrich* test should also be used for Kansas crimes committed before the sentencing guidelines used the person or nonperson designations. And applying that test for the sentencings on the 2015 convictions, the prior 1992 Kansas involuntary manslaughter conviction at issue is comparable to the current Kansas involuntary manslaughter statute on reckless killings—a person crime. This

2

means the district court correctly classified the 1992 Kansas involuntary manslaughter conviction as a person felony in the sentencings for the 2015 thefts.

As to the probation revocation appeals for the sentences imposed on the pre-2015 thefts, Coleman asks us to use the identical-or-narrower test from *Wetrich*, instead of the comparability test used in our caselaw before the 2015 revisions, which Coleman perceives as less favorable to her cause. See *State v. Keel*, 302 Kan. 560, 357 P.3d 251 (2015); see also *State v. Williams*, 299 Kan. 870, 873, 326 P.3d 1070 (2014) (when examining prior conviction statutes, they need only be comparable, not identical). But we need not make that choice because the outcome would be the same under either test. No relief is available.

FACTUAL AND PROCEDURAL BACKGROUND

The State charged Jacqueline Coleman in three separate cases with theft after prior convictions. See K.S.A. 2011 Supp. 21-5801(b)(6); K.S.A. 2013 Supp. 21-5801(b)(6). Those thefts occurred May 2, 2012, January 29, 2013, and February 22, 2014. She pleaded guilty to each offense. The presentence investigation reports recommended a C criminal history score, based in part on Coleman's 1992 Kansas conviction for involuntary manslaughter that was scored as a person felony.

The court conducted a single sentencing hearing in August 2014. It granted Coleman's request for dispositional departure and released her to 12 months' probation. The court imposed three consecutive underlying 13-month prison sentences—the high grid-box sentence for a severity level 9 felony and a C criminal history score. See K.S.A. 2018 Supp. 21-6804(a) (sentencing grid for nondrug felony crimes).

Eight months later, the State charged Coleman with two new counts of theft after prior convictions. Those occurred April 25, 2015. She again pleaded guilty.

The new convictions caused the district court to revoke Coleman's probation in the earlier three cases. It then imposed a modified eight-month prison sentence for the 2012 conviction, and the original, consecutive 13-month underlying prison sentences for the 2013 and 2014 convictions. For the two new 2015 convictions, the court denied Coleman's request for a dispositional departure and sentenced her to the low-grid box 11-month prison term for one conviction, and a concurrent 5-month prison term for the other. It ordered these sentences to run consecutive to the consecutive sentences in the earlier three cases.

Coleman timely appealed and the four cases were consolidated. Coleman argued the district court erroneously classified her 1992 involuntary manslaughter conviction as a person crime and abused its discretion by revoking her probation. A Court of Appeals panel affirmed on both points. *State v. Coleman*, No. 115,293, 2017 WL 1104789 (Kan. App. 2017) (unpublished opinion). Coleman timely petitioned for review.

We granted review only on the criminal history classification. Jurisdiction is proper. See K.S.A. 20-3018(b) (providing for petitions for review of Court of Appeals decisions); K.S.A. 60-2101(b) (Supreme Court has jurisdiction to review Court of Appeals decisions upon petition for review).

SENTENCING FOR THE 2015 THEFT CONVICTIONS

The first question is whether the district court properly scored Coleman's 1992 Kansas involuntary manslaughter conviction as a person felony when sentencing her in the 2015 case. This raises two sub-issues:  (1) what rule should govern a pre-KSGA

4

Kansas offense's classification for these convictions, and (2) was the classification for Coleman's 1992 Kansas involuntary manslaughter conviction correct under that rule? As to the first question, it is important to note we have not yet decided whether the *Wetrich* identical-or-narrower test, which dealt with a prior out-of-state conviction, applies to a pre-KSGA Kansas conviction. See *Wetrich*, 307 Kan. at 562.

*Standard of review*

Classification of prior offenses for criminal history purposes involves statutory interpretation. This is a question of law subject to unlimited review. *Wetrich*, 307 Kan. at 555.

*Discussion*

*(1) What legal rule governs?*

At the time of Coleman's 2015 crimes, the sentencing statute stated:

"(d) Except as provided in K.S.A. 21-6815, and amendments thereto, the following are applicable to determining an offender's criminal history classification:

. . . .

(2) All prior adult felony convictions, including expungements, will be considered and scored. Prior adult felony convictions for offenses that were committed before July 1, 1993, shall be scored as a person or nonperson crime *using a comparable offense under the Kansas criminal code in effect on the date the current crime of conviction was committed*." (Emphasis added.) K.S.A. 2018 Supp. 21-6810.

5

This provision became effective on April 2, 2015, just a few weeks before Coleman committed the 2015 thefts. See L. 2015, ch. 5, § 1. It is the applicable statute.

Before the statutory amendment, K.S.A. 21-6810 directed that all prior felony convictions be considered and scored. But the statute did not give explicit directions on how to score pre-KSGA offenses. See K.S.A. 2014 Supp. 21-6810(d)(2). That legislative silence caused this court to hold that in a case involving the person-crime classification for an out-of-state crime, the determination should be made by referencing the comparable Kansas crime at the time the out-of-state crime was committed. *State v. Murdock*, 299 Kan. 312, 323 P.3d 846 (2014) (*Murdock I*), *overruled by Keel*, 302 Kan. 560. The *Murdock I* decision resulted in a legislative change to K.S.A. 21-6810. In *Keel*, we noted this statutory revision added

> "explicit language to K.S.A. 2014 Supp. 21-6810 . . . stating that, for criminal history purposes, a conviction or juvenile adjudication for an offense committed prior to July 1, 1993, shall be scored as a person or nonperson crime based on the classification in effect for the comparable offense under the Kansas Criminal Code when the current crime of conviction was committed. The legislature also stated its explicit intention that these amendments applied retroactively." *Keel*, 302 Kan. at 563.

More recently in *Wetrich*, 307 Kan. 552, the court adopted a construction of the KSGA's similar provision for out-of-state convictions. *Wetrich* held that comparable offenses under the Kansas criminal code in effect on the date the current crime of conviction was committed were to be referred to when classifying those out-of-state convictions as person or nonperson offenses. See K.S.A. 2018 Supp. 21-6811(e)(3). The *Wetrich* court held,

> "For an out-of-state conviction to be comparable to an offense under the Kansas criminal code, the elements of the out-of-state crime cannot be broader than the elements of the

6

Kansas crime. In other words, the elements of the out-of-state crime must be identical to, or narrower than, the elements of the Kansas crime to which it is being referenced." 307 Kan. at 562.

In reaching the conclusion that "comparable" means the prior offense must have elements identical to, or narrower than, the Kansas crime to which it is being compared, the *Wetrich* court first determined the word "comparable" is ambiguous. 307 Kan. at 559-60 (noting dictionary definitions suggested term could mean either identical or merely similar). Next, the court observed the KSGA's legislative history emphasized a desire for uniformity in sentencing among similarly situated offenders. 307 Kan. at 560-61. It reasoned the alternative to the identical-or-narrower test—which it viewed as "an imprecise, ad hoc comparison" that relied on "'guesswork and intuition'"—undermined this legislative purpose and threatened to violate due process. 307 Kan. at 561. By contrast, it explained, the identical-or-narrower test furthers the act's "goal of an even-handed, predictable, and consistent application of the law across jurisdictional lines." 307 Kan. at 561-62.

Given the similarity in the applicable statutory language, we see no reason why the *Wetrich* court's statutory analysis should not apply with equal force to the phrase "a comparable offense" in K.S.A. 2018 Supp. 21-6810 for in-state Kansas convictions. The Act's underlying purpose of promoting sentencing uniformity is as relevant in Coleman's case as in *Wetrich*, and both Coleman's case and *Wetrich* concern person or nonperson classifications under the KSGA.

We acknowledge the provision at issue in *Wetrich* implicated cross-jurisdictional problems between states, but the differences in how Kansas from time to time defines what constitutes criminal conduct, or how seriously that conduct should be treated when sentencing a current offense, can create similar problems. See *State v. Williams*, 291 Kan.

554, 244 P.3d 667 (2010) (holding out-of-state identity theft convictions that would have been person crimes when they were committed should be scored as person crimes in sentencing for a new Kansas offense, despite Kansas having reclassified identity theft as a nonperson crime at the time of sentencing), *overruled by Keel*, 302 Kan. 560; *State v. Dickey*, 302 Kan. 1018, 1039-40, 350 P.3d 1054 (2015) (*Dickey I*) (concluding the statute governing classification of pre-KSGA burglary offense, which turned on whether prior conviction involved a dwelling, precluded a person-crime classification when Legislature did not make that fact a statutory element of the pre-KSGA offense). This similarity favors a parallel result.

The panel applied a pre-*Wetrich* test in resolving Coleman's claim. See *Coleman*, 2017 WL 1104789, at *3 ("[W]hen examining prior conviction statutes, they need only be comparable, not identical.") (citing *Williams*, 299 Kan. at 873). And it affirmed on that basis. But since this is a direct appeal from her sentence for the 2015 convictions, we determine the *Wetrich* test governs this question. See *State v. Obregon*, 309 Kan. 1267, 1271, 444 P.3d 331 (2019) (applying *Wetrich* in a direct appeal sentencing case; reasoning "'a party may seek and obtain the benefit of a change in the law during the pendency of a direct appeal'").

*(2) Was the classification correct for Coleman's sentences on the 2015 convictions?*

We must next consider whether the 1992 Kansas statute under which Coleman's involuntary manslaughter conviction arose is identical to, or narrower than, the statute making involuntary manslaughter a person offense at the time of her 2015 theft convictions. The 1992 statute provided:

"(a) Involuntary manslaughter is the unlawful killing of a human being, without malice, which is done unintentionally in the wanton commission of an unlawful act not

8

amounting to felony, or in the commission of a lawful act in an unlawful or wanton manner.

"(b) As used in this section, an 'unlawful act' is any act which is prohibited by a statute of the United States or the state of Kansas or an ordinance of any city within the state, which statute or ordinance is enacted for the protection of human life or safety.

"(c) Involuntary manslaughter is a class D felony." K.S.A. 21-3404 (Ensley 1988).

At the time of Coleman's 2015 crimes, the involuntary manslaughter statute read:

"(a) Involuntary manslaughter is the killing of a human being committed:

(1) Recklessly;

(2) in the commission of, or attempt to commit, or flight from any felony, other than an inherently dangerous felony as defined in K.S.A. 2011 Supp. 21-5402, and amendments thereto, that is enacted for the protection of human life or safety or a misdemeanor that is enacted for the protection of human life or safety, including acts described in K.S.A. 8-1566 and subsection (a) of 8-1568, and amendments thereto, but excluding the acts described in K.S.A. 8-1567, and amendments thereto;

(3) in the commission of, or attempt to commit, or flight from an act described in K.S.A. 8-1567, and amendments thereto; or

(4) during the commission of a lawful act in an unlawful manner.

"(b) Involuntary manslaughter as defined in:

(1) Subsection (a)(1), (a)(2) or (a)(4) is a severity level 5, person felony; and

9

(2) subsection (a)(3) is a severity level 4, person felony." K.S.A. 2011 Supp. 21-5405.

Coleman argues the 1992 statute is broader in two respects: (1) the earlier statute defined an "unlawful act" to include an ordinance violation while the later statute does not; and (2) while the earlier statute prohibited the killing of another by committing a lawful act in an "unlawful or wanton manner," the later statute only criminalizes killings done by committing a lawful act in an unlawful manner, i.e., the additional avenue of wantonness is absent.

But these distinctions do not necessarily render the earlier crime broader. As to the first argument, the 1992 involuntary manslaughter statute's definition of "unlawful act" is seemingly broader than the later statute's definition, but the former has an additional requirement that deserves attention.

The 1992 involuntary manslaughter statute specifies the unlawful act must be done wantonly before liability attaches. Under the 1992 criminal code, the criminal intent statute stated:

"(1) . . . [A] criminal intent is an essential element of every crime defined by this code. Criminal intent may be established by proof that the conduct of the accused person was willful or wanton. Proof of willful conduct shall be required to establish criminal intent, unless the statute defining the crime expressly provides that the prohibited act is criminal if done in a wanton manner.

"(2) Willful conduct is conduct that is purposeful and intentional and not accidental. As used in this code, the terms 'knowing,' 'intentional,' 'purposeful,' and 'on purpose' are included within the term 'willful.'

"(3) Wanton conduct is conduct done under circumstances that show a realization of the imminence of danger to the person of another and a reckless disregard or complete indifference and unconcern for the probable consequences of such conduct. The terms 'gross negligence,' 'culpable negligence,' 'wanton negligence' and 'recklessness' are included within the term 'wantonness' as used in this code." K.S.A. 21-3201 (Ensley 1988).

The later involuntary manslaughter statute criminalizes any unintentional killing done recklessly. Its statutory language was largely adopted in 1993. See L. 1993, ch. 291, § 21; *State v. Pulliam*, 308 Kan. 1354, 1364, 430 P.3d 39 (noting Legislature subsequently eliminated explicit requirement that the killing be unintentional). And in the same legislation adopting that new language, the Legislature amended the culpable-mental-states statute to provide:

"Reckless conduct is conduct done under circumstances that show a realization of the imminence of danger to the person of another and a conscious and unjustifiable disregard of that danger. The terms 'gross negligence,' 'culpable negligence,' 'wanton negligence' and 'wantonness' are included within the term 'recklessness' as used in this code." K.S.A. 21-3201(c).

In 2011, when the Legislature recodified the criminal statutes, it again modified the culpable-mental-states statute. L. 2010, ch. 136, § 13. Under that revised statute,

"A person acts 'recklessly' or is 'reckless,' when such person consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." K.S.A. 2011 Supp. 21-5202(j).

Although the prior statute enumerated more offenses that could support involuntary manslaughter charges if committed wantonly resulting in an unintentional

death, those acts would all be crimes under the later provision criminalizing reckless killings. Admittedly, drawing a precise distinction between the terms "wanton" and "reckless" is somewhat elusive, but in *State v. Makin*, 223 Kan. 743, 746, 576 P.2d 666 (1978), the court observed:

> "In determining whether particular conduct is wanton, each case must stand on its own footing as applied to the facts involved. Precise statements of what constitutes wanton or gross negligence are impossible. If the absence of negligence is white and gross negligence is black, then innumerable shadings of grey lie between. Using this analogy the legislature obviously seeks to exclude the pale grey areas from criminal responsibility. The appellant asks us to hold that, by excluding the pale grey areas from criminal responsibility, the legislature has reduced the penalty for the conduct in the black area. [Citation omitted.]"

The *Makin* court held that because wantonness was defined as requiring the defendant to realize imminent danger to another and recklessly disregard or act with complete indifference or unconcern for the probable consequences of an act, the term meant more than conduct that "creates an unreasonable risk of injury to the person or property of another and which constitutes a material deviation from the standard of care which a reasonable person would observe under the same circumstances." 223 Kan. at 746 (holding Legislature did not intend vehicular manslaughter statute to be only source of criminal liability for acts that would otherwise constitute involuntary manslaughter).

The statutory provision stating that wantonness "include[s]" several concepts, among which recklessness is one, might suggest wantonness is broader than recklessness. But the two terms are often used interchangeably, or used to define one another. For example, the definition of recklessness adopted in K.S.A. 21-3201(c) along with the new involuntary manslaughter statute in 1993 expressed that instead of wantonness including recklessness and other heightened negligence concepts, recklessness included wantonness

12

and the heightened negligence concepts. Compare K.S.A. 21-3201 (Ensley 1988) (defining wantonness as including reckless disregard for a risk of imminent danger resulting from conduct), with *Elliott v. Peters*, 163 Kan. 631, 635, 185 P.2d 139 (1947) (quoting G.S. 1945 Supp. 8-531) (noting Legislature once defined "'reckless driving'" as driving "'in such a manner as to indicate either a willful or a wanton disregard for the safety of persons or property'").

And in the civil context, the court has observed that,

"Frequently the word 'reckless' appears to be used synonymously with the word 'wanton.' The word 'recklessness' has been given various shades of meaning but when it is used for the possible purpose of circumventing the defense of contributory negligence, 'recklessness' should be regarded as synonymous with 'wantonness.' If it is less than wantonness it is in the nature of negligence and contributory negligence is a defense to it in this state." *Elliott*, 163 Kan. at 635.

Black's Law Dictionary suggests the term "wanton," if different than recklessness, is an extreme form of recklessness:

"Unreasonably or maliciously risking harm while being utterly indifferent to the consequences. In criminal law, *wanton* [usually] connotes malice (in the criminal-law sense), while *reckless* does not. . . .

'Wanton differs from reckless both as to the actual state of mind and as to the degree of culpability. One who is acting recklessly is fully aware of the unreasonable risk he is creating, but may be trying and hoping to avoid any harm. One acting wantonly may be creating no greater risk of harm, but he is not trying to avoid it and is indifferent to whether harm results or not. Wanton conduct has properly been characterized as "vicious" and rates extreme in the degree of culpability. The two are not mutually exclusive. Wanton conduct is reckless plus, so to speak.' Rollin M. Perkins & Ronald N.

13

Boyce, Criminal Law 879-80 (3d ed. 1982)." Black's Law Dictionary 1897 (11th ed. 2019).

Coleman argues the 1992 statute's reference to ordinance violations makes the offense broader. She uses as an example of this a hypothetical ordinance banning public smoking. In her view, she could have been liable for the 1992 crime if she killed another "while smoking in a place where smoking was prohibited, in reckless disregard of that prohibition," but would not be liable now because violating a smoking ordinance is neither lawful nor a misdemeanor.

But for that example to amount to involuntary manslaughter in 1992, the State would have had to prove much more than the violation and reckless disregard for the prohibition. It would need to also prove the ordinance was violated "under circumstances that show a realization of the imminence of danger to the person of another." K.S.A. 21-3201(3) (Ensley 1988). And it would have had to show the defendant "reckless[ly] disregard[ed]" or was "complete[ly] indifferen[t]" to "the probable consequences" of the act—not merely that the defendant disregarded the fact of the act's unlawfulness. K.S.A. 21-3201 (Ensley 1988).

At oral arguments before this court, defense counsel enhanced the hypothetical public-smoking-violation to include a victim with an oxygen tank placed adjacent to a no-smoking sign. Counsel imagined the victim died from an explosion caused by a person who saw the sign and the oxygen tank but ignored both when lighting a cigarette. But this perfectly illustrates why Coleman's argument fails.

If there were circumstances showing a defendant realized there was imminent danger to another person—such as the oxygen tank hypothetical—and recklessly disregarded or was indifferent to the probability the other person would be killed, that

14

defendant would be guilty under the later statute of reckless involuntary manslaughter, regardless of whether the underlying conduct was lawful. See *State v. Louis*, 305 Kan. 453, 461-62, 384 P.3d 1 (2016) ("Conduct designed to cause death—and, for that matter, conduct the actor knows is reasonably certain to cause death—is now sufficient to establish the defendant acted recklessly."); *State v. Jenkins*, 272 Kan. 1366, 39 P.3d 47 (2002) (holding evidence sufficient to support involuntary manslaughter when defendant, who killed other motorists when he lost control of his vehicle during an epileptic seizure, had history of accidents caused by epileptic seizures, established that defendant knew of the imminent danger he created to others and consciously disregarded that risk by operating a vehicle).

As to Coleman's second argument, the later involuntary manslaughter statute is not narrower than the 1992 statute merely because it omits the phrase "or wanton" from the subsection addressing killings "during the commission of a lawful act in an unlawful manner." What constituted killings resulting from wanton conduct—either during lawful or unlawful activity—are criminalized as "reckless" killings under the later statute's subsection (a). If anything, the later statute, K.S.A. 2011 Supp. 21-5405, appears to criminalize more conduct than the earlier offense because, in subsections (a)(2) and (a)(3), the subsequent statute imposes strict liability for unintentional killings committed in the res gestae of acts contrary to statutes designed to protect public safety—without the wanton state of mind required under the 1992 statute.

We hold the 1992 involuntary manslaughter statute and the later statute are comparable, since the earlier crime is narrower than the later one. And since the current crime designates involuntary manslaughter as a person felony, the district court properly scored the 1992 conviction as a person felony when sentencing Coleman's 2015 theft convictions.

15

We consider next whether classifying the 1992 conviction as a person crime resulted in an incorrect criminal history score for the purposes of sentencing Coleman's 2012, 2013, and 2014 theft convictions. This portion of the consolidated appeals arises as challenges to Coleman's probation revocations, and not as a direct appeal as with the sentences for the 2015 thefts. She claims the district court imposed an illegal sentence, arguing the identical-or-narrower test must apply based on the United States Supreme Court's decisions in *Descamps v. United States*, 570 U.S. 254, 260-61, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (2013) (holding prior conviction can qualify as predicate offense for sentencing enhancement under federal Armed Career Criminal Act only if offense's elements are identical to or narrower than elements of generic offense), and *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000) (holding facts that increase maximum penalty for crime, other than prior convictions, must be submitted to jury and proved beyond a reasonable doubt). There are two problems with this.

First, the definition of an illegal sentence does not include a claim that the sentence violates a constitutional provision, so a defendant may not file a motion to correct an illegal sentence based on constitutional challenges to his or her sentence. *State v. Dickey*, 305 Kan. 217, 221, 380 P.3d 230 (2016) (*Dickey II*). In *State v. Dubry*, 309 Kan. 1229, 1233, 444 P.3d 328 (2019), the court declined to reach the merits of a constitutional claim identical to Coleman's but pertaining to an out-of-state crime's classification, because the district court correctly classified the crime according to the law at the time of sentencing.

Second, we do not need to answer whether these sentencing challenges are entitled to be resolved under the identical-or-narrower test as she advocates, or the judicially adopted comparability rule for pre-KSGA Kansas offenses in *Keel*. The result is the same

because we have already determined the 1992 statute is identical to or narrower than the current statute. On that basis, there is no question the 1992 conviction was properly scored in the earlier sentences.

We explicitly do not resolve which standard is applicable when pre-KSGA Kansas offenses are used to sentence crimes that were committed before K.S.A. 2015 Supp. 21-6810 codified the comparability requirement.

Affirmed.

PATRICK D. MCANANY, Senior Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:** Senior Judge McAnany was appointed to hear case No. 115,293 under the authority vested in the Supreme Court by K.S.A. 20-2616 to fill the vacancy on the court by the retirement of Chief Justice Lawton R. Nuss.