NOT DESIGNATED FOR PUBLICATION

No. 125,596

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CURTIS JAMES COLLEY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Geary District Court; RYAN W. ROSAUER, judge. Submitted without oral argument. Opinion filed August 9, 2024. Affirmed.

*Kasper Schirer*, of Kansas Appellate Defender Office, for appellant.

*Tony Cruz*, assistant county attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before ATCHESON, P.J., ISHERWOOD and HURST, JJ.

ISHERWOOD, J.: Curtis James Colley appeals from the sentence he received under the Kansas Sentencing Guidelines Act (KSGA) following his no contest pleas to possession of methamphetamine with intent to distribute and criminal threat. Colley claims that his equal protection rights were violated at sentencing when his prior post-KSGA convictions were designated as person offenses based on the guidelines' classification in effect at the time of his current conviction, rather than through operation of the respective comparability analyses used to make that determination for prior out-of-state and pre-KSGA convictions. According to Colley, offenders in each of the three categories are similarly situated and, as such, a comparability test should be used when

assigning the person or nonperson designation to the prior crimes of each group. Following a careful review of the evolution of criminal history classifications, we are convinced that Colley's prior post-KSGA offenses were properly classified as person felonies in accordance with the guidelines' classification for those crimes at the time of his current conviction, and that doing so did not give rise to an equal protection violation. The decision of the district court is affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

In May 2022, Colley pled no contest to possession of methamphetamine with intent to distribute, with a firearm enhancement, and criminal threat for offenses that occurred on December 6, 2020. His presentence investigation (PSI) report reflected a criminal history score of B based on his 2005 Kansas convictions for aggravated burglary and aggravated intimidation of a witness, both of which were classified as person felonies. Neither party objected to the report, and both agreed that Colley's criminal history score was accurate.

The district court imposed the standard prison sentence of 79 months, which included 6 months for the firearm enhancement for Colley's drug offense and a prison term of 6 months for his criminal threat conviction. The two sentences were ordered to be served concurrently.

Colley now brings his case before our court for a determination of whether the manner in which his sentence was calculated resulted in an equal protection violation.

*The KSGA is the appropriate resource for determining the person or nonperson status of prior convictions that an offender acquired after the guidelines went into effect.*

Colley's sole argument on appeal is that the assessment tool used to determine whether his prior post-KSGA convictions constituted person or nonperson felonies violates the Equal Protection Clause of the Fourteenth Amendment. He contends that the rubric used for his case essentially treats offenders with prior post-KSGA convictions differently than those with prior pre-KSGA convictions or prior out-of-state offenses when analyzing the person or nonperson nature of the earlier crimes. He highlights the different tests employed in each context in an effort to demonstrate that his case was plagued by arbitrary and irrational disparate treatment.

The State counters that Colley failed to preserve this argument for appeal and did not successfully carry his burden to demonstrate that an exception exists for considering his constitutional claim for the first time on appeal. The State further asserts that, even if we opt to reach the merits of Colley's appeal, no equal protection violation occurred.

*Preservation of Claim*

Generally, reviewing courts do not consider constitutional issues raised for the first time on appeal. There are exceptions to this rule, which include: (1) the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case, (2) consideration of the theory is necessary to serve the ends of justice or to prevent the denial of fundamental rights, and (3) the district court was right for the wrong reason. *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 (2019). While the existence of exceptions may provide an avenue by which to review an unpreserved issue, it does not place an obligation upon us to undertake an analysis of the

3

merits. *State v. Parry*, 305 Kan. 1189, 1192, 390 P.3d 879 (2017). Rather, the decision to do so is a prudential one. *State v. Gray*, 311 Kan. 164, Syl. ¶ 1, 459 P.3d 165 (2020).

Colley implores us to review the merits of his claim through operation of the first two exceptions. We agree both are applicable here. First, the issue involves only a question of law arising from admitted facts and is determinative of the case. Neither party disputes the facts. The singular issue before us simply demands a particularized analysis of the various criminal history assessment tools to determine whether a valid equal protection issue exists. This amounts to a question of law that requires no factual findings. See *State v. Myers*, 62 Kan. App. 2d 149, 182-83, 509 P.3d 563, *rev. denied* 316 Kan. 762 (2022).

Second, consideration of Colley's claim is arguably necessary to serve the ends of justice. See *Myers*, 62 Kan. App. 2d at 183. The Equal Protection Clause of the Fourteenth Amendment states:  "No state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Equal protection requires that persons similarly situated with respect to the legitimate purpose of the law receive like treatment. *State v. Gaudina*, 284 Kan. 354, 372, 160 P.3d 854 (2007). Ensuring that our criminal sentencing structure does not violate the principles of equal protection serves the ends of justice.

We are satisfied that the arguments advanced by Colley are sufficient to fulfill the requirements of Kansas Supreme Court Rule 6.02(a)(5) (2024 Kan. S. Ct. R. at 36) (requiring the complaining party to provide an explanation for why an issue not raised below is nonetheless properly before the court). Accordingly, we will exercise our discretion to consider the merits of Colley's claim.

*Standard of Review*

Whether the operation of a statute results in an equal protection violation is a question of law subject to unlimited review. *State v. Mueller*, 271 Kan. 897, 902, 27 P.3d 884 (2001). Generally, appellate courts presume statutes are constitutional and must resolve all doubts in favor of a statute's validity. *State v. Gonzalez*, 307 Kan. 575, 579, 412 P.3d 968 (2018).

*The Current Tests Used to Classify Prior Convictions as Person and Nonperson Offenses*

Under the KSGA, criminal sentences are generally the product of two factors: a defendant's criminal history and the severity level of the crime committed. K.S.A. 21-6804(c). When calculating a criminal history score, the trial court must determine, among other things, whether the defendant's prior convictions qualify as person or nonperson offenses. K.S.A. 21-6810. For convictions that occurred after implementation of the KSGA, this classification process is relatively straightforward. Prior post-KSGA convictions receive the same person or nonperson classification at the time of the new conviction as those prior convictions received on the date of their commission, unless the Legislature has changed the classification of the crime, or the statute has been ruled unconstitutional. *State v. Lyon*, 58 Kan. App. 2d 474, 492, 471 P.3d 716 (2020). Classification of pre-KSGA offenses and prior out-of-state convictions is a bit more complicated.

*Pre-KSGA Offenses*

K.S.A. 21-6810(d)(2) directs that when the offenses at issue were committed before July 1, 1993, they "shall be scored as a person or nonperson crime using a *comparable* offense under the Kansas criminal code in effect on the date the current crime of conviction was committed." (Emphasis added.) In 2020, the Kansas Supreme

Court put a finer point on it and interpreted the phrase "comparable offense" to mean that the elements of the prior crime must be identical to or narrower than the elements of the current crime it is being measured against. *State v. Coleman*, 311 Kan. 305, Syl. ¶ 2, 460 P.3d 368 (2020). If the elements of the prior conviction prove to be broader than the current crime, the prior must be classified as a nonperson offense. See *State v. Wetrich*, 307 Kan. 552, 563-64, 412 P.3d 984 (2018).

### *Out-of-State Prior Offenses*

The analysis for this group of offenders bears some similarity to those with pre-KSGA priors in that both essentially contemplate the use of a comparability test. The current analysis demands that a prior out-of-state offense be comparable to a current offense under the Kansas Criminal Code within the meaning of K.S.A. 21-6810(d) and K.S.A. 21-6811(e)(3). See *Lyon*, 58 Kan. App. 2d at 484.

K.S.A. 21-6811(e)(3)(B)(iii) offers the guidance required to conduct a comparability analysis in this context. The provision states that "[a]n out-of-state conviction . . . for the commission of a felony offense . . . shall be classified as a nonperson felony if the elements of the offense do not *require* proof of any of the circumstances in subparagraph (B)(i) or (ii)." (Emphasis added.) Stated another way, if at least one of the statutorily provided for circumstances is required by the elements for the out-of-state offense, it must be scored as a person felony. See *State v. Busch*, 317 Kan. 308, 313-14, 528 P.3d 560 (2023). To be clear, the statute mandates an elements-only comparison.

It is Colley's position that the varying classification methods are material here because his 2005 convictions for aggravated burglary and aggravated intimidation of a witness were defined more broadly in 2005 than at the time of his current conviction in 2020. Specifically, in 2020 the aggravated burglary provision did not extend to those who

"enter[ed] into or remain[ed] in a retail or commercial premises at any time that it is open to the public after having received a personal communication from the owner or manager of such premises not to enter" thereon. K.S.A. 2020 Supp. 21-5807(e). By contrast, such conduct did run afoul of the statute in existence when Colley committed his prior crimes in 2004. See K.S.A. 21-3716 (Furse). Similarly, the culpable mental state required for aggravated intimidation at the time of his prior conviction was "knowingly and maliciously." K.S.A. 21-3832(a) (Furse). But by the time of his current conviction in 2020, that element was modified to "with an intent to vex, annoy, harm or injure . . . or an intent to thwart or interfere . . . with . . . justice." K.S.A. 2020 Supp. 21-5909.

Thus, his prior convictions stemmed from the violation of statutes which contained a broader scope of elements than the versions in effect at the time of his current conviction. Colley argues that while those statutory disparities are essentially treated as irrelevant to the person or nonperson designation for his priors because they were acquired within the State of Kansas after the KSGA was implemented, the impact is nevertheless considerable because it leaves him saddled with a longer sentence than what he may have received under the comparability methods used for the other two groups.

It is against this backdrop that Colley advances his constitutional challenge. He contends that the uneven treatment borne of the varying classification standards denies him the equal protection he is entitled to under the Fourteenth Amendment and undermines the intent of the KSGA to ensure the imposition of standardized sentences.

*Equal Protection Analysis*

The Equal Protection Clause of the Fourteenth Amendment prohibits the states from denying any person within their jurisdiction the equal protection of the laws. U.S. Const. amend. XIV, § 1. Additionally, sections 1 and 2 of the Kansas Constitution Bill of Rights have an effect similar to that of the Fourteenth Amendment's Equal Protection

7

Clause. *Farley v. Engelken*, 241 Kan. 663, 667, 740 P.2d 1058 (1987). The United States Supreme Court has described the concept of "equal protection" as one which "emphasizes disparity in treatment by a State between classes of individuals whose situations are arguably indistinguishable." *Ross v. Moffitt*, 417 U.S. 600, 609, 94 S. Ct. 2437, 41 L. Ed. 2d 341 (1974). Thus, the guiding principle of the Equal Protection Clause is that similarly situated individuals should be treated alike. *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985). But the principle only applies to those individuals who are truly similarly situated in light of the governmental provision at issue.

This court undertakes a three-step inquiry when analyzing an equal protection claim. First, it considers whether the legislation creates a classification resulting in different treatment of similarly situated individuals. If the statute treats "'arguably indistinguishable'" people differently, we must then determine the appropriate level of scrutiny to assess the classification by examining its nature or the right at issue. Finally, the court applies that level of scrutiny to the statute. *State v. LaPointe*, 309 Kan. 299, 316, 434 P.3d 850 (2019).

First, we must determine whether Colley has carried his burden to show that he is similarly situated to other types of offenders but experiences different treatment under the law. See *LaPointe*, 309 Kan. 299, Syl. ¶ 6. We find that Colley has satisfied that burden to the extent he has identified a variance in treatment across three separate groups:

  (1) those, like himself, with prior convictions under the KSGA, that receive a person or nonperson classification for those prior offenses based on the designation they had at the time of their current conviction;

  (2) those with convictions acquired prior to the implementation of the KSGA that are designated as person or nonperson offenses based on a comparison of

8

whether the elements for those crimes were identical to or narrower than the current version of the statute; and

(3) those with prior out-of-state convictions whose earlier crimes are classified as person or nonperson offenses after filtering their prior violations through the element driven circumstances test set out by the Legislature under K.S.A. 21-6811(e)(3)(B)(iii).

While a variance is evident, the inquiry is two-fold. We must also determine whether offenders falling within these groups are properly viewed as "similarly situated." To resolve that issue, we analyze the potentially lawful objective contemplated by the Legislature with respect to the classification. See *State v. Little*, 58 Kan. App. 2d 278, 281, 469 P.3d 79 (2020) (citing *State v. Cheeks*, 298 Kan. 1, 6, 310 P.3d 346 [2013]) (noting that the "purpose of the law" is "the proper focus of a similarly situated inquiry"), *overruled on other grounds by LaPointe*, 309 Kan. 299, 434 P.3d 850 (2019); see also *Ernest v. Faler*, 237 Kan. 125, 130, 697 P.2d 870 (1985) (noting that "persons similarly situated with respect to the legitimate purpose of the law [must] receive like treatment"); *Shelton v. Phalen*, 214 Kan. 54, Syl. ¶ 2, 519 P.2d 754 (1974) (same); 3 Rotunda & Nowak, Treatise on Constitutional Law: Substance and Procedure § 18.2(a), pp. 312-13 (5th ed. 2012) ("Usually one must look to the end or purpose of the legislation in order to determine whether persons are similarly situated . . . .").

Kansas courts have long recognized that the primary undercurrent motivating enactment of the KSGA was to standardize sentences and thereby limit the effects of racial and geographic bias. *State v. Keel*, 302 Kan. 560, 574, 357 P.3d 251 (2015) (quoting *State v. Paul*, 285 Kan. 658, 667, 175 P.3d 840 [2008]). As we noted earlier, the guidelines endeavored to accomplish this goal through the creation of a dual-axis sentencing structure which contemplates two controlling core factors—the severity of the current crime of conviction and the offender's criminal history score. 302 Kan. at 574. The latter of the two is the product of the number and severity of the offender's prior

9

adjudications and convictions; that is, misdemeanors and felonies, and whether they fall into the person or nonperson category of offenses. 302 Kan. at 574. As referenced above, that final factor must often be further parsed out to identify those which occurred out of state, prior to implementation of the guidelines, or after the guidelines were enacted. The appropriate treatment to afford this final step so that such offenses may reasonably be included in the sentencing calculation has been a persistent struggle. See *Coleman*, 311 Kan. 305; *State v. Murdock*, 309 Kan. 585, 439 P.3d 307 (2019) (*Murdock II*); *Wetrich*, 307 Kan. 552; *Keel*, 302 Kan. 560; *State v. Murdock*, 299 Kan. 312, 323 P.3d 846 (2014) (*Murdock I*); *State v. Williams*, 291 Kan. 554, 244 P.3d 667 (2010); *State v. Vandervort*, 276 Kan. 164, 72 P.3d 925 (2003).

In *Lyon*, 58 Kan. App. 2d 474, a panel of this court addressed the growing pains associated with prior convictions in the context of an issue that was very similar to the challenge Colley brings to us to resolve. The analysis detailed by the *Lyon* court is useful in guiding our assessment of the purpose of the law as necessary to resolve Colley's claim. In that case, Lyon received a PSI report which reflected a C level criminal history score based, in part, on a 2010 Kansas conviction for aggravated burglary that was classified as a person felony. Despite accepting those terms at sentencing, Lyon later argued on appeal that the prior conviction was erroneously classified as a person offense. It was his contention, much like Colley's, that because the elements of aggravated burglary were broader in 2010 than when his current crime was committed in 2017, the prior should have been classified as a nonperson offense. Lyon directed the panel to *Wetrich* and *Keel* as support for his contention that the more appropriate manner of classification for his post-KSGA offense was to employ the identical or narrower elements test to identify the "'comparable Kansas offense'" at the time he committed his current crime in 2017. 58 Kan. App. 2d at 485.

The *Lyon* court rejected this contention and determined that "the overall design and structure of the KSGA instructs that applying the *Wetrich* identical-or-narrower test

is inappropriate when classifying post-KSGA convictions as person or nonperson offenses." 58 Kan. App. 2d at 486. In support of this conclusion, it highlighted the "'established sentencing rule'" which states that "the penalty parameters for an offense are fixed on the date the offense was committed." 58 Kan. App. 2d at 486 (quoting *Keel*, 302 Kan. at 582). The panel then identified the statutory foundation for that long-standing rule, beginning with K.S.A. 2017 Supp. 21-6810(d)(2), which provides that those prior convictions and adjudications for pre-KSGA offenses "shall be scored as a person or nonperson crime using a comparable offense under the Kansas criminal code in effect on the date the current crime of conviction was committed." 58 Kan. App. 2d at 486. It then turned to K.S.A. 2017 Supp. 21-6811(e)(3), which required courts to classify out-of-state convictions by referring to "'comparable offenses under the Kansas criminal code in effect on the date the current crime of conviction was committed.'" 58 Kan. App. 2d at 486-87. Finally, it drew support from K.S.A. 2017 Supp. 21-6810(d)(8), which indicates that "'if the statute has not been repealed, then the crime is scored using the classification in the statute at the time of the current crime of conviction.'" 58 Kan. App. 2d at 488-89. Thus, when the provision violated by the prior conviction remains in effect, it is appropriate to simply use the designation provided for in that statute.

The *Lyon* panel concluded that the Legislature made the clear and express decision to restrict the comparability approaches set out under K.S.A. 2017 Supp. 21-6810(d) and K.S.A. 2017 Supp. 21-6811(e)(3) to only pre-KSGA offenses and out-of-state offenses. That is, it took the affirmative step to exclude post-KSGA offenses from its application. 58 Kan. App. 2d at 487. The court went on to highlight how the justification for the different classification approaches confirmed that its decision was a reasonable one. It observed that pre-KSGA and out-of-state convictions lack a person or nonperson designation, so use of a comparability analysis is a necessity to bring those offenses within reach of the KSGA's application. The same shortcoming does not exist with post-KSGA priors given that their person or nonperson designation is already statutorily

11

provided for. 58 Kan. App. 2d at 487. Thus, the rationale for a comparability test is absent from the post-KSGA context. 58 Kan. App. 2d at 487.

This long and winding path illustrates that the purpose sought by the classification mechanisms is to preserve the integrity of a uniform sentencing structure. With that objective in mind, we are persuaded that the offenders in each of the three groups are truly similarly situated. Each illustrated category contemplates similar prior criminal offenses that were committed in different analytical environments, yet they must nevertheless be placed on common ground in order to be subject to the KSGA's uniform sentencing scheme.

The next step in our analysis is to examine the relationship between the classification and the objective to determine whether equal protection guarantees were violated. The three levels of scrutiny available for that purpose include: rational basis review, intermediate scrutiny, and strict scrutiny. *Chiles v. State*, 254 Kan. 888, 891-92, 869 P.2d 707 (1994). The level of scrutiny applied depends on the nature of the legislative classification and the rights it ultimately impacts. *Romer v. Evans*, 517 U.S. 620, 632, 116 S. Ct. 1620, 134 L. Ed. 2d 855 (1996). Kansas caselaw states, and the parties agree, that the lowest degree of scrutiny available, rational basis review, is the appropriate analysis for equal protection challenges directed at sentencing classifications. See *Logsdon v. State*, 32 Kan. App. 2d 1, Syl. ¶ 2, 79 P.3d 1076 (2002) (noting that Kansas courts have historically applied the rational basis test to sentencing classifications challenges).

With our path going forward now clear, when conducting a rational basis review, we note that relevance is the only relationship required between the classification and the objective. *Chiles*, 254 Kan. at 891. In *McGowan v. Maryland*, 366 U.S. 420, 425, 81 S. Ct. 1101, 6 L. Ed. 2d 393 (1961), the Court explained that "[t]he constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the

12

achievement of the State's objective." And, insofar as the objective is concerned, "[a] statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." 366 U.S. at 426.

To withstand rational basis scrutiny, a statute must satisfy two components: (1) it must implicate legitimate goals, and (2) the means chosen by the Legislature must bear a rational relationship to those goals. *State v. Denney*, 278 Kan. 643, 651, 101 P.3d 1257 (2004). Perfection in making the necessary classifications is neither possible nor necessary. *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S. Ct. 1153, 25 L. Ed. 2d 491 (1970). The burden is on Colley to negate every conceivable reasonable basis that might support the varying treatment of the similarly situated classes, and that burden simply has not been met here. See *Myers*, 62 Kan. App. 2d at 188.

The Legislature, not the judiciary, has the role of establishing an appropriate sentencing scheme for convicted offenders. *State v. Reed*, 248 Kan. 792, 798, 811 P.2d 1163 (1991). Where individuals in a group that is affected by a law possess distinguishing characteristics relevant to interests that the State has the authority to implement, courts have been very reluctant "to closely scrutinize legislative choices as to whether, how, and to what extent those interests should be pursued. In such cases, the Equal Protection Clause requires only a rational means to serve a legitimate end." *Cleburne*, 473 U.S. at 441-42.

The State has two interests that are served by the current sentencing scheme: "maintaining stability in the sentencing process and a concomitant obligation to improve the criminal justice system." *State v. Standifer*, 24 Kan. App. 2d 441, 446, 946 P.2d 637 (1997). We know from the plain language of the KSGA that all prior convictions and adjudications are to be included in an offender's criminal history and that to receive their proper due they must bear either a person or nonperson classification. See K.S.A. 21-6810(d). Achievement of that goal demands that the circumstances presented by a vast

13

array of offenders be categorized in such a way that they can be adequately measured by those two components.

*Adams v. State*, 27 Kan. App. 2d 292, 5 P.3d 1002 (2000), is somewhat informative for our analysis. That case addressed the operation of K.S.A. 1993 Supp. 22-3717(f), which stated that individuals sentenced for crimes committed after July 1, 1993, while on parole for a crime committed before July 1, 1993, were eligible to have their sentence for the earlier crime converted from indeterminate to determinate. But the same option was not extended to parolees who returned to prison merely as a result of technical violations. A panel of this court declined to find that the disparity resulted in an equal protection violation. Rather, it concluded that by limiting conversion to felony violators, the Legislature intended to create a transition between pre-KSGA sentences and guidelines-based sentences. Thus, the mere existence of a variance in treatment did not trigger a rights violation. Rather, it was rationally related to the KSGA's goal to achieve consistency and proportionality. 27 Kan. App. 2d at 294.

Because Colley's prior crimes were committed after the guidelines were implemented, no machinations were required to ensure they were part of the standardized sentencing equation. That is, the Legislature had already ensured those offenses were readily absorbed into the operation of the guidelines. We cannot lose sight of the "'established sentencing rule'" which states that "'the penalty parameters for an offense are fixed on the date the offense was committed.'" *Lyon*, 58 Kan. App. 2d at 486. Thus, we decline Colley's invitation to supplant the concrete classification assigned by the Legislature with one that is the product of a comparability analysis. The same classification characteristics do not exist with respect to out-of-state or pre-KSGA convictions. In those circumstances it is reasonable and, truly, essential, for assessments to be undertaken to bridge any gaps between those outlier offenses and the KSGA as Kansas' universal sentencing mechanism.

14

In *State v. Terrell*, the Kansas Supreme Court found that under the KSGA "all prior convictions, whether out-of-state, pre-Guidelines, or amended post-Guidelines, be classified as person or nonperson as of the time the new infraction is committed" because to do so provides a mechanism for sentences "to reflect 'ever-evolving sentencing philosophies and correction goals.'" 315 Kan. 68, 74-75, 504 P.3d 405 (2022) (quoting *Keel*, 302 Kan. at 588). We likewise adhere to that view and are satisfied that the classification efforts undertaken by K.S.A. 21-6810(d)(2) and (d)(9) and K.S.A. 21-6811(e)(3)(B) are reasonably related to legitimate state interests as they serve to further the KSGA's goal of an even-handed, predictable, and consistent application of the law across jurisdictional and temporal lines. See *Lyon*, 58 Kan. App. 2d at 487-88.

Affirmed.

* * *

ATCHESON, J., concurring: We are to apply rational basis review to Defendant Curtis James Colley's equal protection challenge to how the Geary County District Court scored two of his past felony convictions for criminal history purposes in sentencing him for possession of methamphetamine with the intent to distribute. Given the exceptionally deferential character of the rational basis test, I agree that Colley has not shown a violation of his constitutionally protected equal protection rights. So I concur in the result we reach today in affirming Colley's sentence.

Colley committed the drug crime in December 2020. The circumstances are otherwise irrelevant to his constitutional argument. Colley's criminal history includes Kansas convictions in 2005 for aggravated burglary and aggravated intimidation of a witness—those crimes were then considered person felonies under the sentencing guidelines, and, for that reason, they were scored that way in determining Colley's criminal history for sentencing on his methamphetamine conviction. Colley's sentence of

15

79 months in prison is a direct product of his criminal history, the classification of the conviction as a severity level 3 drug offense, and a 6-month enhancement because he used a firearm. Colley was also convicted of and sentenced for felony criminal threat, but his criminal history did not have any effect on the sentence for that conviction, so his equal protection argument has no bearing on the six-month prison term the district court imposed.

Colley's equal protection argument goes something like this:

If a defendant had Kansas convictions for aggravated burglary or aggravated intimidation of a witness that predated the enactment of the sentencing guidelines in 1993, they would be scored as nonperson felonies for criminal history purposes in 2020. Likewise, out-of-state convictions for crimes that are similar to some forms of aggravated burglary and aggravated intimidation of a witness in Kansas would be scored as nonperson felonies for criminal history purposes under K.S.A. 21-6811(e)(3)(B). Simply for purposes of disposing of Colley's argument, I assume those premises to be legally correct. Colley contends that puts him in a disadvantaged class of defendants with Kansas convictions for aggravated burglary or aggravated intimidation of a witness after the sentence guidelines went into effect that are scored as person felonies for criminal history purposes as compared to defendants with either similar Kansas convictions predating the sentencing guidelines or similar convictions from out of state that are scored as nonperson felonies. As a result of that difference in scoring, Colley faced a longer presumptive sentence under the guidelines in 2020 than one of those defendants would have. And, according to Colley, that disparity amounts to an equal protection violation.

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution requires that state and local governments treat similarly situated persons the same absent some justification for a disparity. See *Engquist v. Oregon Dept. of Agriculture*, 553 U.S. 591, 601, 128 S. Ct. 2146, 170 L. Ed. 2d 975 (2008) ("Our equal

16

protection jurisprudence has typically been concerned with governmental classifications that 'affect some groups of citizens differently than others.'") (quoting *McGowan v. Maryland*, 366 U.S. 420, 425, 81 S. Ct. 1101, 6 L. Ed. 2d 393 [1961]); *Reed v. Reed*, 404 U.S. 71, 75-76, 92 S. Ct. 251, 30 L. Ed. 2d 225 (1971) ("The Equal Protection Clause . . . den[ies] to States the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute."); *Jurado v. Popejoy Constr. Co.*, 253 Kan. 116, 123, 853 P.2d 669 (1993) ("[E]qual protection requires . . . that legislative classifications be reasonable, not arbitrary, and that they be justified by legitimate legislative objectives."). The Kansas Constitution Bill of Rights section 2 affords a comparable protection. *Rivera v. Schwab*, 315 Kan. 877, 894, 512 P.3d 168 (2022).

In considering equal protection challenges, courts examine governmental schemes with differing degrees of deference depending on how those schemes create and then treat groups or classes of persons receiving benefits or incurring deprivations. See *Winston v. City of Syracuse*, 887 F.3d 553, 560 (2d Cir. 2018) ("[W]hat sort of [equal protection] review a court must apply, depends on the nature of the class of individuals the state or local government treats differently or the rights at issue."); *Rolf v. City of San Antonio*, 77 F.3d 823, 828 (5th Cir. 1996) ("Under the equal protection analysis, we apply different standards of review depending upon the right or classification implicated."); *State v. Smith*, No. 109,165, 2015 WL 1122951, at *26 (Kan. App. 2015) (unpublished opinion) (Atcheson, J., concurring in part and dissenting in part) ("The intensity of judicial review or scrutiny of governmental action creating classifications implicating equal protection rights depends upon the nature of the government's line drawing.").

As a general rule, courts will apply what's called rational basis review—the most deferential standard—to equal protection attacks on sentencing statutes. See *Chapman v. United States*, 500 U.S. 453, 465, 111 S. Ct. 1919, 114 L. Ed. 2d 524 (1991); *State v. Perez*, 269 Kan. 340, 342, 11 P.3d 52 (2000); *State v. Dixon*, 60 Kan. App. 2d 100, 134-

17

35, 492 P.3d 455 (2021) (rational basis review applied to equal protection challenge based on "double" sentencing rule in K.S.A. 21-6819[b][4]). As the *Chapman* Court explained, upon a criminal conviction, a person may be punished as required by statute and consistent with constitutionally mandated equal protection "so long as the penalty is not based on an arbitrary distinction." 500 U.S. at 465. A statute is presumed constitutional for purposes of rational basis review, and the party saying otherwise bears the burden of proving an equal protection violation. *Heller v. Doe*, 509 U.S. 312, 320, 113 S. Ct. 2637, 125 L. Ed. 2d 257 (1993); *Mudd v. Neosho Memorial Regional Med. Center*, 275 Kan. 187, 198, 62 P.3d 236 (2003); *Dixon*, 60 Kan. App. 2d at 135. The parties agree that the rational basis test applies here.

A governmental classification—such as the sentencing guidelines' treatment of defendants' criminal histories—survives rational basis review if "'a plausible policy reason'" supports the scheme and it is not so removed from that reason as to result in an "'arbitrary or irrational'" distinction. *Fitzgerald v. Racing Assn. of Central Iowa*, 539 U.S. 103, 107, 123 S. Ct. 2156, 156 L. Ed. 2d 97 (2003) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 11-12, 112 S. Ct. 2326, 120 L. Ed. 2d 1 [1992]); see *Heller*, 509 U.S. at 319-20; *State v. Cheeks*, 298 Kan. 1, 9, 310 P.3d 346 (2013). A statute or other regulation may be upheld for any justifiable purpose; the purpose need not be the one that prompted its adoption. See *McDonald v. Board of Election*, 394 U.S. 802, 809, 89 S. Ct. 1404, 22 L. Ed. 2d 739 (1969); *Estate of Kunze v. C.I.R.*, 233 F.3d 948, 954 (7th Cir. 2000). The fit between the statute and the purpose may be inexact, meaning the legislation need not be especially well tailored to accomplishing the governmental objective. *Heller*, 509 U.S. at 320-21 ("an imperfect fit between means and ends" acceptable under rational basis review); *Peden v. State*, 261 Kan. 239, 258-59, 930 P.2d 1 (1996). In sum, courts will tolerate some inequity under rational basis review if a statutory scheme otherwise advances legitimate governmental purposes or identifiable public policies.

18

With those principles in mind, I turn to Colley's equal protection attack on his criminal history. Before the sentencing guidelines were adopted, Kansas convictions were not labeled as person or nonperson felonies. To account for that omission, district courts are supposed to score a defendant's convictions predating the sentencing guidelines as person or nonperson felonies by looking at how the criminal code treated "a comparable offense" as of the date the defendant committed the crime for which he or she is being sentenced. K.S.A. 21-6810(d)(2). In enacting the rule, the Legislature reasonably presumed a certain consistency in the state's substantive criminal law over time, so there would be identifiable comparable felonies in the current code that have been classified as person or nonperson offenses. The Kansas Supreme Court has added judicial gloss requiring the elements of the crime scored in the defendant's criminal history to be the same as or narrower than the current comparable crime. *State v. Coleman*, 311 Kan. 305, Syl. ¶ 2, 460 P.3d 368 (2020). The additional limitation tends to curtail subjective decision-making across district courts in determining what might or might not be a "comparable" offense, thereby promoting uniformity in scoring criminal histories and, in turn, identifying presumptive sentences under the guidelines.

Using a defendant's criminal history to establish a presumptive sentence serves an overarching purpose of imposing harsher punishments on recidivists. That is a legitimate policy objective, and the person-nonperson classification of a defendant's previous convictions ratchets up the punishment for criminals who have a history of committing felonies that tend to directly traumatize or endanger victims or other people.

At best, Colley has suggested a less than perfect fit between those appropriate legislative purposes and the statutory scheme for classifying Kansas convictions predating the sentencing guidelines. But that sort of imperfection cannot overcome the judicial deference required in making a rational basis review of legislative action for equal protection purposes.

19

Moreover, Colley posits that the sentencing scheme tends to underclassify at least some preguidelines convictions as nonperson felonies rather than person felonies for criminal history purposes. But when Colley was sentenced in 2022, any conviction predating the sentencing guidelines would have been at least 30 years old. A conviction that remote in time would lose at least some persuasive force as an indicator of a defendant's present disposition to recidivate. Although old felony convictions never drop off a defendant's criminal history, a district court in a given case may treat the age of a defendant's past felony convictions as a mitigating factor warranting a less severe punishment than the sentencing guidelines might presumptively require. *State v. Heath*, 21 Kan. App. 2d 410, 415, 901 P.2d 29 (1995); see *State v. Montgomery*, 314 Kan. 33, 38, 494 P.3d 147 (2021) (noting *Heath* as among cases recognizing nonstatutory mitigating factors). That also militates against finding the statutory treatment of some felony convictions predating the sentencing guidelines as nonperson felonies to be arbitrary or irrational, even though similar convictions under the guidelines might be person felonies.

The statutory classification of out-of-state felony convictions for criminal history purposes entails a somewhat different approach. But it, too, advances a legitimate governmental policy, thereby defusing Colley's equal protection challenge. Under K.S.A. 21-6811(e)(3)(B), out-of-state felony convictions are to be classified as person offenses if the elements of that crime include one or more of the factual characteristics listed in the statute. The list includes obvious attacks on physical safety, such as the death of a person or the infliction of bodily harm. See K.S.A. 21-6811(e)(3)(B)(i)(a), (c). And the list extends to psychological upset caused by threats or "fear of . . . bodily harm" or from unwanted sexual advances. See K.S.A. 21-6811(e)(3)(B)(i)(b), (f). One of the categories is "entering or remaining within any residence, dwelling or habitation"—conduct that likely could lead to a fraught encounter with an occupant and that underlies several forms of burglary criminalized in Kansas law. K.S.A. 21-6811(e)(3)(B)(i)(h); see K.S.A. 21-5807(a)(1)(A) (burglary defined as entering dwelling with intent to commit specified

20

crimes and designated person felony); K.S.A. 21-5807(b)(1)(A) (aggravated burglary defined as entering occupied dwelling with intent to commit specified crimes and designated person felony).

The scheme, then, is a systematic one built largely on objective criteria that district courts can apply without either pronounced subjective coloring or undue confusion over vague terminology. The criteria generally correspond to the sorts of characteristics that typify crimes designated as person felonies in the Kansas Criminal Code. So the fit between means and end is readily recognizable and obviously rational—the Legislature has enacted a taxonomy to identify out-of-state crimes that are like person felonies under Kansas law, so criminal defendants with similar recidivist histories face similar presumptive sentences for their present crimes of conviction. Again, granting the premise of Colley's position for the sake of argument, the fit may not be perfect. But it need not be to survive his equal protection challenge.

For those reasons, I concur in the judgment and agree we should affirm the sentence the district court imposed on Colley for his drug conviction.