No. 128,400

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

AARON ANDRES ARREOLA,
*Appellant*.

SYLLABUS BY THE COURT

1.

Before imposing a fine as part of the punishment for a crime, K.S.A. 21-6612(b) requires the district court to find the defendant has derived a pecuniary gain from the crime or that the fine is adapted to deterrence of the crime or to the correction of the offender. The court must state these findings on the record. K.S.A. 21-6612(d).

2.

Once a court has decided to impose a fine, K.S.A. 21-6612(c) requires it to take into account the financial resources of the defendant and the nature of the burden that payment of the fine will impose. The court must state its findings on these considerations on the record. K.S.A. 21-6612(d).

Appeal from Ford District Court; LAURA H. LEWIS, judge. Submitted without oral argument. Opinion filed January 2, 2026. Vacated in part and remanded with directions.

*Brian L. White*, of Hinkle Law Firm LLC, of Wichita, for appellant.

*Andrew J. Lohmann*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

1

Before CLINE, P.J., BRUNS and COBLE, JJ.

CLINE, J.: Upon conviction of certain felonies and misdemeanors, a defendant may be ordered to pay a fine as part of their sentence if the defendant profited from the crime or if the district court finds that imposition of a fine would either deter future commission of the crime or rehabilitate the offender. K.S.A. 21-6612(b). In addition, to avoid placing a disproportionate burden on indigent defendants, our Legislature requires the court to consider both the defendant's ability to pay and the burden that payment of a fine would impose when determining the amount and method of payment of the fine. K.S.A. 21-6612(c).

In this case, the district court imposed the maximum fine for each of Aaron Andres Arreola's crimes while also sentencing him to the maximum prison sentence allowed for those crimes. Arreola challenges the court's imposition of fines because he claims the court did not make the necessary findings under K.S.A. 21-6612. After reviewing the record, we agree. We therefore vacate the order requiring payment of the fines and remand the case for resentencing.

FACTUAL AND PROCEDURAL BACKGROUND

Since this appeal involves a procedural error, the underlying facts are not material. In short, Arreola pled no contest to several felonies in two consolidated cases after some charges were amended down and others were dismissed. The plea agreement did not discuss fines, but it did specify the crimes Arreola was pleading guilty to. Both parties anticipated a total sentence of 84 months.

At sentencing, the district court heard from several individuals about the impact of Arreola's criminal actions, which included killing a man. It also received letters vouching for Arreola's character. In the end, the district court sentenced Arreola to 86 months in

2

prison and imposed the maximum statutory fine for each crime. The fines totaled $501,000.

After the district court imposed the fines and Arreola's prison sentence, the State asked the court to specify its findings under K.S.A. 21-6612. The court responded:

"At this point in time, I believe that in light of the sentence that was imposed, the timing, and the other factors that have gone into effect, because of that, I believe that the fine is appropriate to be assessed for each count as that fine is contemplated.

"Mr. Arreola will have post-release supervision duration of 36 months. During that time, I believe—it was my understanding that he was gainfully employed prior to this matter. I've not heard any evidence that he would not be able to be gainfully employed again, and that he would be able to work and pay off those fines."

Arreola objected to the fines, pointing out that he had been unemployed for over two years and the evidence at the sentencing hearing did not support that he had any ability to pay the fines. The court confirmed its order. Arreola timely appealed.

REVIEW OF ARREOLA'S APPELLATE CHALLENGE

Arreola argues the district court failed to make the necessary findings under K.S.A. 21-6612 before imposing the fines. Whether a district court complied with this statute when sentencing a defendant is a question of law over which appellate courts exercise unlimited review. *State v. Copes*, 290 Kan. 209, 213, 224 P.3d 571 (2010).

As mentioned, K.S.A. 21-6612 provides the criteria for imposing fines for an offense. It states:

"(a) When the law authorizes any other disposition, a fine shall not be imposed as the sole and exclusive punishment unless having regard to the nature and circumstances

3

of the crime and to the history and character of the defendant, the court finds that the fine alone suffices for the protection of the public.

"(b) The court shall not sentence a defendant to pay a fine in addition to a sentence of imprisonment, probation or assignment to a community correctional services program unless:

(1) The defendant has derived a pecuniary gain from the crime; or

(2) the court finds that a fine is adapted to deterrence of the crime involved or to the correction of the offender.

"(c) In determining the amount and method of payment of a fine, the court shall take into account the financial resources of the defendant and the nature of the burden that its payment will impose.

"(d) If a fine is ordered pursuant to subsection (b), the court's findings regarding the requirements of subsections (b) and (c) shall be stated on the record."

Arreola contends the court did not provide any of the necessary findings required by K.S.A. 21-6612(b) or (c), which must be stated on the record according to (d).

*The district court did not state sufficient findings under K.S.A. 21-6612(b).*

To begin, Arreola points out that the district court did not find that he derived pecuniary gain from his crimes or that the fines were adapted to the deterrence of the crime involved or to the correction of the offender. K.S.A. 21-6612(b) requires the district court to make one of these findings before it can impose a fine.

In response, the State contends that "the district court need not state the specific language from the statute," asserting that we can find the district court implicitly made the required findings. It then pieces together various statements the court made throughout the sentencing hearing to argue that the district court's findings here were sufficiently implicit. It analogizes these statements to those made in four cases in which our court determined a district court's statements were sufficient despite a failure to expressly mention the statutory factors.

4

But there are two problems with the State's approach: (1) the decisions on which it relies were all issued before K.S.A. 21-6612(d) was added; and (2) those decisions contained much more explicit statements than we have here.

The original version of K.S.A. 21-6612 (formerly cited as K.S.A. 21-4607) was enacted in 1969. L. 1969, ch. 180, § 21-4607. While the criteria the court must consider before imposing a fine has not changed since enactment, the statute did not explicitly require the court to state its findings regarding that criteria on the record until the statute was recodified as K.S.A. 21-6612 in 2010. L. 1969, ch. 180, § 21-4607; L. 1986, ch. 123, § 8; Repealed, L. 2010, ch. 136, § 307. All four cases the State relies on—*State v. McNett*, 15 Kan. App. 2d 291, 807 P.2d 171 (1991); *State v. Walker*, No. 75,850, 1997 WL 35435535 (Kan. App. 1997) (unpublished opinion); *Harris v. State*, No. 67,527, 1992 WL 12944580 (Kan. App. 1992) (unpublished opinion); and *State v. Smith*, No. 59,014, 1987 WL 1565729 (Kan. App. 1987) (unpublished opinion)—were issued before this requirement in K.S.A. 21-6612(d) was added. And while we agree the statute does not require the district court to use any specific language, the State's contention that we can imply those findings is at odds with the Legislature's clarification in 2010 requiring that those findings be explicitly stated.

The next problem with the State's position is the cases on which it relies are all distinguishable because the court's reasoning for imposing the fine was obvious. For example, in *Harris*, we found the district court's statements that "'[i]n addition, since this was a crime for profit, you sold drugs for profit, you're assessed a fine of $10,000.00 on each count'" sufficiently implied the court found the defendant derived a pecuniary gain from his crimes. 1992 WL 12944580, at *2. Similarly, we found the court's statements in *McNett* that the defendant "'in fact did deal in a lot of dollar's worth of cocaine, tens of thousands of dollar's worth'"; that he began selling drugs to support his floundering salvage business; that he admitted for about six months he met his weekly payroll of $1,500 to $2,000 from drug sales; and that he also admitted receiving somewhere

5

between $39,000 and $52,000 from drug sales were also sufficient to imply that the court found the defendant derived a pecuniary gain from his crimes. 15 Kan. App. 2d at 293. These determinations seem reasonable. Yet here we have no statements regarding any earnings Arreola gained from his crimes.

In *Walker*, we determined the court found a fine was adapted to the correction of the offender since the court imposed it to encourage the defendant to successfully complete probation. There, the court imposed a $5,000 fine and ordered the defendant to pay $500 with the understanding that the rest of the fine would be remitted upon his successful completion of probation. 1997 WL 35435535, at *1. And in *Smith*, we found the district court's statements were sufficient to show it made a finding that the imposition of a fine was adapted to the deterrence of the crime or the correction of the offender. We determined the court imposed the fine there "to defuse the brewing animosities that led to the crime in the first place," noting:

> "At the sentencing hearing, the trial court spoke at length with the defendant about the causes of the crime. The catalyst of the crime was a longstanding animosity between defendant and a neighbor. The trial court indicated that this animosity, generated by defendant's temper, should not develop any further. The court wanted the defendant and the victim to respect each others' privacy and property rights. By imposing the fine in this case, it is logical the trial court was attempting to deter any further criminal conduct between the defendant and his victim." 1987 WL 1565729, at *2-3.

The State compares these situations to Arreola's, contending the district court's statements highlighting that it did not believe Arreola was receiving sufficient prison time for his crimes and that he had not shown any remorse or taken full accountability for his actions meant it had imposed the fines "to correct and deter further violent and deadly behavior by Arreola." Not only does the State seem to overstate the court's intention but it also takes the court's statements out of context.

The State relies on the following comments from the district court to support its point:

> "[Y]ou committed murder. You chose to brutally, in an act of cold blood, end the life of another human being. You've done so in a manner that, even up until today, you failed to show remorse or take full accountability in this Court's opinion.
>
> "As I stated, you entered into a plea agreement, you saved the family the process of going through the pain and the anguish and the further trauma of a jury trial. Though, I suspect that your intention in doing so was more self-serving and less for the benefit of the family, or your family, than it was for your own interest.
>
> "Mr. Arreola, as I stated to you, I'm going to be completely honest with you. The sentence that I'm about to enter, that I'm bound to enter in this case, I do not think justice is being served by it. I don't think that it's fair, just, and equitable.
>
> "Today is one of the days that I do not enjoy my job. I don't think—it's one of the days that I find that it is easy for me to understand why people say that our justice system is flawed."

Nowhere in these comments does the court address its imposition of fines or reasoning for doing so, and we fail to see the connection between these comments and that decision. Additionally, the court went on to say:

> "So, that all I can hope for is, from this point going forward, is that you really understand how lucky you are to have gotten the plea agreement that you've gotten. And, I can only hope that you will take that tremendous gift that's been given to you, and that you will actually go out there and you will live a life, and you will be the person that all of those letters submitted on your behalf think that you are."

Considering this context, the court's remarks appear directed towards the benefit Arreola received from his plea agreement, instead of explaining why it believed imposition of a fine would deter future criminal behavior. See K.S.A. 21-6612(b).

Further, as Arreola notes, the State treads into dangerous territory by contending the district court interpreted Arreola's failure to speak at his sentencing as a failure to show remorse or take accountability for his actions and relied on this factor to impose the fines, since Arreola had a constitutional right to remain silent at that hearing. See *Mitchell v. United States*, 526 U.S. 314, 316-17, 119 S. Ct. 1307, 143 L. Ed. 2d 424 (1999) (A sentencing court may not draw an adverse inference from a defendant's silence in determining facts about the crime which bear upon the severity of the sentence.). While most appellate courts allow a sentencing court to consider a defendant's silence as a lack of remorse or failure to take accountability when determining whether to grant leniency in sentencing, several recognize a distinction when that silence is used to penalize. Winbush, *Consideration of Lack of Emotion, Remorse, or Empathy or Failure to Accept Responsibility During Sentencing as Violating Criminal Defendant's Fifth Amendment Privilege Against Self-Incrimination—Federal Cases*, 105 A.L.R. Fed. 3d Art. 3, §§ 2-3 (2025).

In sum, K.S.A. 21-6612(d) now requires a district court to state its findings about the requirements of K.S.A. 21-6612(b) on the record. This means a district court must express—more directly than the court did here—its finding on the record that either a defendant has derived a pecuniary gain from the crime or that a fine is adapted to deterrence of the crime involved or to the correction of the offender. K.S.A. 21-6612(b). We are not free to put words into the district court's mouth to satisfy its statutory obligations.

*The district court did not state sufficient findings under K.S.A. 21-6612(c).*

Once a district court has determined the requirements of K.S.A. 21-6612(b) are satisfied—which allows it to impose a fine—then it must make additional findings about the amount and method of payment of the fine. K.S.A. 21-6612(c) requires the court to

8

"take into account the financial resources of the defendant and the nature of the burden that . . . payment [of the fine] will impose."

Arreola contends the court failed to comply with these requirements because it provided no substantive analysis of either of these issues. He cites two cases, *State v. Cook*, No. 111,704, 2015 WL 3874997 (Kan. App. 2015) (unpublished opinion), and *McNett*, as authority for requiring a district court to conduct a more robust analysis than the court did here. In *Cook*, we found the district court erred in imposing a fine under K.S.A. 21-6612 when it focused only on the defendant's capacity to work. Because the district court did not ask the defendant about her assets, debts, financial obligations, or resources, we determined it lacked necessary information to meet its statutory obligation to explicitly consider the burden that imposition of the fine would impose. 2015 WL 3874997, at *3. And in *McNett*, we found the district court erred because no evidence supported the court's finding that the defendant could pay the fine after his release on parole. The court failed to address the burden such a fine would impose on the defendant and the record revealed limited prospects for employment for the defendant upon his release. 15 Kan. App. 2d at 294-95.

Likewise, the only rationale the district court offered here was that Arreola "was gainfully employed prior to this matter" and the court had "not heard any evidence that he would not be able to be gainfully employed again, and that he would be able to work and pay off those fines." The district court had no information about Arreola's assets, debts, financial obligations, or resources. Yet, as we found in *Cook* and *McNett*, Arreola's ability to find employment upon release is only one aspect of his financial situation, and without any context, this information alone does not address the nature of any burden that payment of the fines will impose on him.

The State, for its part, contends the district court was aware of facts other than Arreola's capacity to work. It cites various documents in the record—none of which the

district court mentioned that it considered—which evidence Arreola's age, that he has a high school diploma with some college experience, he had three children, he was employed at a Toyota dealership and an individual said he "excelled at work," and that he had retained counsel for the entire case. While these facts may be true, the district court mentioned none of them when the State asked the court to state its findings to support its decision on fines. We cannot assume the court considered any of these facts when it failed to mention them.

The State also contends the district court's inquiry resembled the inquiries in *State v. Bendure*, No. 66,220, 1991 WL 12018560 (Kan. App. 1991) (unpublished opinion), and *State v. Gooch*, No. 113,863, 2016 WL 6139116 (Kan. App. 2016) (unpublished opinion), both of which this court found sufficient. While unpublished opinions are not binding precedent, we generally recognize their persuasive value when applicable. Supreme Court Rule 7.04(g)(2)(B)(i) (2025 Kan. S. Ct. R. at 48); see *State v. Lyon*, 58 Kan. App. 2d 474, 480, 471 P.3d 716 (2020). That said, like the other cases cited by the State, we find these two unpersuasive.

In *Bendure*, the district court imposed a sentence of one year in custody and a fine of $1,000 for the defendant's crime of the unlawful possession of marijuana, as defined in K.S.A. 1990 Supp. 65-4127b(a)(3), a class A misdemeanor. The defendant challenged the imposition of the fine on appeal by claiming the court did not make any specific findings on the record of his financial resources and the nature of the burden such a fine would impose. 1991 WL 12018560 at *2. We found that while the district court in *Bendure* "did not specifically state that it was considering the defendant's financial resources and the burden imposed . . . it is evident from the record that the court did so." 1991 WL 12018560, at *2. And we described this record as follows:

> "[D]efendant's counsel stated the defendant has had several jobs in the past and had been
> employed continuously at a restaurant in Lenexa since he was released pending

10

disposition of the case. The district court was also aware that the defendant was married and that the couple was expecting their first child in January 1991. Additionally, the district court considered the pre-sentence investigation report, which stated that the defendant had obtained his G.E.D. and that he had been employed in the past. When released, the defendant will be approximately 24 years old; he is an able-bodied young man and will be able to obtain some sort of employment." 1991 WL 12018560, at *2.

At first blush, *Bendure* appears to support the State's position. But a few problems appear upon a deeper examination. First, we examined the court's decision in *Bendure* under an abuse of discretion standard. That is, we looked at whether no reasonable person would agree with the court's decision to impose a $1,000 fine under those circumstances. 1991 WL 12018560, at *1-2. That is a much more limited review and a different question than we have before us. Here, we are not looking at whether no reasonable person would have imposed the maximum fines on Arreola but whether the district court complied with its statutory obligations when it did so. As mentioned, this inquiry presents a legal question which is reviewed under a different standard—de novo—meaning the reasonableness of the court's decision is not at play.

Next, like the State's other cases, *Bendure* was issued before subsection (d) was added to K.S.A. 21-6612. But there is a nuance regarding the requirements of K.S.A. 21-6612(c) that isn't present with the requirements of K.S.A. 21-6612(b). Before the Legislature amended the requirements of K.S.A. 21-6612 to add subsection (d)—which requires the court to state its findings on the requirements of subsections (b) and (c) on the record—the Kansas Supreme Court imposed this requirement in *State v. McGlothlin*, 242 Kan. 437, 747 P.2d 1335 (1988). That is, the court held the district court must state on the record that it has taken into account the financial resources of the defendant and the nature of the burden that payment of the fine will impose. 242 Kan. at 441. This is essentially the same language the Legislature adopted when it added (d).

11

While we recognized this precedent in *Bendure*, it is now a mandatory statutory requirement. This development makes it fair to assume the requirement is now stricter since it has been codified: meaning we cannot assume the district court considered the statutory factors by implication. As the Legislature requires, the findings must be explicitly stated. Here, the only consideration the district court expressed was related to Arreola's capacity to work. And solely relying on Arreola's capacity to work makes *Bendure* factually distinguishable as well, since the district court there apparently considered other information like Bendure's familial situation and obligations, his education, his age, and the fact that he had been continuously working upon his release pending disposition of his case.

In *Gooch*, the defendant challenged the district court's decision under K.S.A. 22-4513 to impose a reduced BIDS fee of $350. The State correctly notes that the district court there limited its factfinding to the defendant's ability to work. And while we noted in *Gooch* that "[a] district judge could beneficially engage in considerably more inquiry about a defendant's education, job training, work history, physical capabilities, obligations for the support of others, and assets and liabilities," we still found the court's "minimal" inquiry nonetheless satisfied the requirement to consider the financial resources of the defendant and the nature of the burden that payment of BIDS fees will impose. 2016 WL 6139116, at *2.

Yet context presents an important distinction here. In *Gooch*, we were looking at whether the district court's inquiry was sufficient to explain its decision to impose a *reduced* BIDS fee of $350, whereas here we are looking at whether the court's inquiry was sufficient to explain its decision to impose the maximum fines possible for all of Arreola's crimes. And while K.S.A. 22-4513 does use the phrasing in K.S.A. 21-6612(c), it has an exit ramp which is not present in K.S.A. 21-6612 and which may explain a more abbreviated inquiry: a defendant who has been ordered to reimburse BIDS fees "who is not willfully in default in the payment thereof may at any time petition the court which

12

sentenced the defendant to waive payment of such sum or of any unpaid portion thereof." K.S.A. 22-4513(b). There is no such option for a criminal fine. In any event, we read *Gooch* as specific to the facts of that case, which are materially different from the one before us.

For these same reasons, the State's reliance on *State v. Buck-Schrag*, 312 Kan. 540, 555-56, 477 P.3d 1013 (2020), is also unavailing. In that case, the Kansas Supreme Court found a district court's comments about the defendant's ability to work in prison were sufficient to require him to repay $7,000 in BIDS attorney fees. As in *Gooch*, the context of *Buck-Schrag* matters. There the Supreme Court found the inquiry into the defendant's financial resources and burden the imposition of his BIDS attorney fees would place on him was adequate to impose a reduced fee amount, which would be repaid in annual increments of $243. *Buck-Schrag*, 312 Kan. at 555. Again, this is significantly different than imposing the maximum amount of fines with no mention of a payment plan.

The Supreme Court also provided little analysis of this issue, simply noting the district court in *Buck-Schrag* conducted a more thorough analysis than the district courts did in *State v. Johnson*, 286 Kan. 824, 852, 190 P.3d 207 (2008), and *State v. Stevens*, 285 Kan. 307, 330-31, 172 P.3d 570 (2007). It faulted the court in *Stevens* for assessing $50 per month in fees without determining a total amount, and in *Johnson*, for simply stating: "'Costs of the action are assessed to the defendant.'" 286 Kan. at 852. While the district court's findings and analysis appear to have been more robust in *Buck-Schrag* than in *Stevens* and *Johnson*, this comparison is not helpful in analyzing whether the district court here complied with K.S.A. 21-6612.

In short, when determining the amount and method of payment of a fine, K.S.A. 21-6612(c) requires a district court to consider both the financial resources of the defendant and the nature of the burden that payment of the fine will impose. This means a court must consider more than a defendant's capacity to work. It must consider the

13

defendant's sources of income as well as their financial obligations, such as child support obligations and other debts. And, under K.S.A. 21-6612(d), it must state on the record how those factors were weighed in determining the amount and method of payment of any fine imposed.

CONCLUSION

The imposition of fines on a criminal defendant requires serious consideration. The inability to pay court fines has collateral consequences which can impact a defendant's rehabilitation and prolong their involvement with the criminal justice system. Repaying court debt also hinders a defendant's ability to cover essential costs like food, housing, healthcare, transportation, and family obligations, perpetuating cycles of financial hardship and burdening families. See Kane, et al., *Punished for Poverty: How Fees and Fines Trap the Poor in Perpetual Debt*, 49 Vt. L. Rev. 88, 92-93 (2024).

With these concerns in mind, our Legislature limited the situations in which punitive fines can be imposed and requires the district court to consider a defendant's ability to pay when determining the amount and method of payment of any punitive fine. Because the record reveals the district court did not make the necessary findings under K.S.A. 21-6612 before it imposed punitive fines on Arreola, we vacate the order regarding payment of the fines and remand the case for resentencing.

Vacated in part and remanded with directions.